UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| David Goulding, Howard Salomon, Robin Goulding, and John O'Shay | ) ) ) | |
| Plaintiffs | ) ) | Case No. 1:22-cv-05224 |
| Vs | ) ) | Honorable Sharon Johnson Coleman |
| Mark Miller | ) ) | |
| Defendant | ) | |

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Now Comes the Defendant, Mark Miller, by his attorney, and moves this Court pursuant to Sections 12(b)(1), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure for an Order dismissing the First Amended Complaint against him since he is not subject to this Court's jurisdiction under 28 U.S.C. Section 1332 because this Court lacks personal jurisdiction over him and there is no applicable forum selection clause that would demonstrate that he consented in jurisdiction in Illinois. Additionally, none of the Plaintiffs have standing to bring this lawsuit.

**INTRODUCTION**

Plaintiffs, in their First Amended Complaint, allege breach of contract, as well as conversion and common law fraud based on a series of transactions between Capitol Capital Corporation ("CCC") and Tiger Trout regarding the sale of Indo Global Exchange Pte, Ltd. ("IGEX") stock. Plaintiffs previously attempted to assert jurisdiction over Mark Miller based on diversity of jurisdiction, but failed to plead that this Court had personal jurisdiction over him. Plaintiffs now assert that this Court has jurisdiction over Mark Miller based on a forum selection clause in a Stock

1

Purchase Agreement between Mark Miller and CCC. The Stock Purchase Agreement is not a valid contract under Illinois law because it was never signed by an authorized agent of CCC.

Furthermore, the Stock Purchase Agreement is not the basis for Plaintiffs claims in their First Amended Complaint. Their claims revolve around a previous Sales Agreement that allocated sales proceeds in the event of a sale of IGEX stock. The Sales Agreement did not have a forum selection clause or a consent to jurisdiction. Thus, the forum selection clause in the Stock Purchase Agreement is not applicable to the Plaintiffs' claims pursuant to the Sales Agreement.

Additionally, the Plaintiffs do not have standing to assert a claim against Mark Miller based on a forum selection clause in the Stock Purchase Agreement between Miller and CCC in which they were not the real party in interest.

## STATEMENT OF FACTS

1. Capitol Capital Corporation ("CCC") was administratively dissolved on August 9, 2015 (See attached Exhibit 1).

2. On July 17, 2019, an Agreement ("Sales Agreement") was entered into by John O'Shay, Robin Goulding, Mark Miller, Jason Black, all individually, and Howard Salamon, on behalf of CCC. The Sales Agreement referred to a Debt Settlement Resolution in which CCC relinquished all rights to a Debenture and a $100,000 Note in exchange for 680,000,000 shares of IGEX . The anticipated net proceeds of the sale of IGEX stock was to be distributed pursuant to a formula set forth in the Sales Agreement (See attached Exhibit 2). The Sales Agreement, which Plaintiffs claim is their basis for their damages, did not contain a forum selection clause or a consent to jurisdiction clause.

3. The Sales Agreement never came to fruition because Mark Miller, working on behalf of CCC, was not able to deposit[1] IGEX stock with Pershing LLC ("Pershing"), a financial Broker/Dealer. Pershing would not allow it to be deposited because the stock contained a "shell risk" designation, which was a red flag for accepting the penny stock. Thus, Mark Miller was unable to sell any IGEX stock pursuant to the Sales Agreement.

4. On August 12, 2019, Howard Salamon resigned as president of CCC (See attached Exhibit 3); David Goulding became the new president of CCC.

5. On August 14, 2019, CCC and Mark Miller entered into a Stock Purchase Agreement (See attached Exhibit 4) for CCC to sell 166,750,000 shares of CCC to Mark Miller for the purchase price of $102,000. The deal was not consummated. No shares passed to Mark Miller and no money was paid by Mark Miller.

6. On October 6, 2019, Mark Miller reinstated CCC as a Wyoming corporation. Pursuant to the Wyoming corporate filing, Mark Miller was named CEO and Chairman of CCC (See attached Exhibit 5).

7. On November 30th, 2019, David Goulding and Randall Goulding resigned from positions that they held at CCC and transferred their stock interests in CCC to Mark Miller (See attached Exhibit 6, Colorado Articles of Incorporation, paragraph 11);

8. On December 11, 2019, CCC became a Colorado corporation. (See attached Exhibit 6 ).

9. On November 22, 2019, CCC transferred 136,130,000 shares to Tiger Trout. On December 9, 2019, CCC transferred 180,000,000 shares to Tiger Trout. On December 12, 2019 CCC transferred 210,000,000 shares to Tiger Trout, which paid $120,000.00 for the three transactions.(See attached Group Exhibit 7).

---

[1] Pershing LLC would not accept CCC stock to be deposited because it did not maintain audited financial statements and it was not current in its filings with the Over the Counter Market ("OTC").

**LEGAL ARGUMENT**

I. **This Court Does Not Have Personal Jurisdiction Over Mark Miller Pursuant To A Forum Selection Claue**

  A. The Stock Purchase Agreement Is An Unenforceable Contract

When a court's jurisdiction is contested, the plaintiff bears the burden of proving that jurisdiction lies in the forum state. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936).

A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir.2002). The court must, therefore, find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause. See *Purdue Research v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003).

Plaintiffs' original Complaint claimed that it established jurisdiction merely by the fact that there was subject matter jurisdiction. Defendant filed a Motion to Dismiss because the Plaintiffs failed to establish sufficient contacts between Miller and this forum to satisfy the Illinois Long Arm Statute and the Fourteenth Amendment's Due Process clause. Plaintiffs realized that Miller was correct about the lack of personal jurisdiction as pled in the original Complaint. Plaintiffs now attempt to assert in their First Amended Complaint that this Court has personal jurisdiction over the Defendant Miller based on a forum selection clause in paragraph 6.7 of a Stock Purchase Agreement (See attached Exhibit 4), which is not the agreement that the Plaintiffs refer to when they claim their causes of action in the First Amended Complaint.

The validity of the contract cited by Plaintiffs is determined by Illinois law. A valid and enforceable contract under Illinois law requires an offer, acceptance, and consideration. *Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156, ¶ 68, 371 Ill.Dec. 550, 990 N.E.2d 738 (citing *CNA International, Inc. v. Baer*, 2012 IL App (1st) 112174, ¶ 45, 367 Ill.Dec. 116, 981 N.E.2d 441 ). Failure to agree upon an essential contract term indicates that there is no mutual assent and, thus, no enforceable contract. *Rose*, 343 Ill. App. 3d at 1091, 278 Ill.Dec. 751, 799 N.E.2d 469. Generally, "one of the acts forming part of the execution of a written contract is its signing" as it indicates "mutuality or assent" to the terms of the agreement. (Internal quotation marks omitted.) *Hedlund & Hanley, LLC v. Board of Trustees of Community College District No. 508*, 376 Ill. App. 3d 200, 206, 315 Ill.Dec. 1, 876 N.E.2d 1 (2007).

"Whether signing an instrument is a condition precedent to that instrument becoming a binding contract usually depends on the intent of the parties." *Adames v. Florey (In re Adames)*, 2020 IL App (1st) 190573, 178 N.E.3d 235, 448 Ill.Dec. 911 (Ill. App. 2020). A condition precedent is defined as "an act that must be performed or an event that must occur before a contract becomes effective or before one party to an existing contract is obligated to perform." *Cathay Bank v. Accetturo*, 2016 IL App (1st) 152783, ¶ 32, 408 Ill.Dec. 675, 66 N.E.3d 467. Whether signing an instrument is a condition precedent to that instrument becoming a binding contract usually depends on the intent of the parties. *Lynge v. Kunstmann*, 94 Ill. App. 3d 689, 694, 50 Ill.Dec. 146, 418 N.E.2d 1140 (1981). Where parties reduce the agreement to writing and its signature by them is a condition precedent to its completion, no contract will exist until that is done. *S.N. Nielsen Co. v. National Heat & Power Co.*, 32 Ill. App. 3d 941, 946, 337 N.E.2d 387 (1975). In Re Adames, at *supra* at p. 922.

The Court in *In Re Adames* determined that the settlement agreement, shareholder agreement, and confidentiality agreement in question expressly identified the parties to the document in the introductory paragraphs. The last page of each document consisted of separate signature lines for the parties mentioned earlier in the introductory paragraphs. The *In Re Adames* court found the Fifth District's decision in *Graebe v. Graebe*, 95 Ill. App. 3d 1144, 51 Ill.Dec. 537, 420 N.E.2d 1095 (1981), instructive. Unlike the case of *Graebe*, where the shareholders' agreement simply consisted of unmarked signature lines, the documents here consisted of a line with the party's name and title printed underneath, thus designating a specific place for him to sign.

In the case at bar, the Stock Purchase Agreement in writing requires signatures as a condition precedent to its completion. Paragraph 4.2 of the Stock Purchase Agreement states:

> <u>Authorization Enforcement</u>. (i) This Agreement has been duly executed and delivered by the Seller and (ii) this Agreement constitutes a legal, valid and binding obligation of the Seller, enforceable against the Seller in accordance with its terms. The Transferred rights reflect the rights afforded to stockholders generally, and are legally transferrable to Buyer.

Paragraph 5.2 of the Stock Purchase Agreement states:

> <u>Authorization Enforcement</u>. (i) This Agreement has been duly executed and delivered by the Buyer and (ii) this Agreement constitutes a legal, valid and binding obligation of the Buyer enforceable against the Buyer in accordance with its terms. The Transferred rights reflect the rights afforded to stockholders generally, and are legally transferrable to Seller.

There are two signature lines to the Stock Purchase Agreement. One is for Seller, Capitol Capital Corporation, to be signed by David Goulding and one signature line is for Buyer, Mark Miller. Both paragraphs specifically require that it be duly executed to constitute a legal, valid and binding contract. David Goulding never signed the Agreement on behalf of CCC. Since his

signature was a condition precedent to the validity of the contract, there was no valid contract between the parties.

### B. There was No Performance by Either Party to the Sales Agreement

There was no performance by either party to the Sales Agreement that Plaintiffs assert as the basis for their claims against Mark Miller, thus rendering the contract null and void. Under Illinois law, to state a cause of action for breach of contract, a plaintiff must allege the existence of a contract, the plaintiff's performance of all contractual obligations required of him or her, the facts constituting the alleged breach, and the existence of damages resulting from the breach. Also, the existence of the contract must be detailed by stating facts constituting an offer, acceptance, and consideration. (*Martin-Trigona v. Bloomington Federal Savings & Loan Association* (1981), 101 Ill.App.3d 943, 57 Ill.Dec. 348, 428 N.E.2d 1028.); *Segall v. Berkson*, 487 N.E.2d 752, 139 Ill.App.3d 325, 93 Ill.Dec. 927 (Ill. App. 1985). In the case at bar, Mark Miller was unable to sell the IGEX stock, a condition precedent to the payout to the parties, thus rendering the contract void.

### II. Plaintiffs Lack Standing To Bring This Lawsuit

Normally, a natural person is not the real party in interest for bringing a suit based on a corporation's rights, even when the person is the sole owner of the corporation. See *Domino's Pizza, Inc. v. McDonald* , 546 U.S. 470, 477, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006).

In *G & S Holdings LLC v. Cont'l Cas. Co*., 697 F.3d 534 (7th Cir. 2012), the court dealt with a case in which an explosion occurred at a metal processing plant in Manchester, Georgia owned by GSMC, which had obtained insurance through Continental, covering damage to the plant. Continental made some payments to GSMC, but GSMC subsequently sued, alleging that the payments were inadequate. GSMC then went into bankruptcy. Plaintiffs, claiming that the failure of Continental to timely pay adequate damages to GSMC caused them damages, brought suit

against Continental and Hylant, their former insurance broker. Three of the plaintiffs were businesses affiliated with GSMC, and are additional named insureds under the policy that covered the Manchester plant. The other plaintiffs were owners and operators of GSMC, and alleged that they are third-party beneficiaries of the policy.

> The court held that the plaintiffs were not the real parties in interest because they did not seek recovery for an injury they suffered directly, but rather sought redress for derivative harm resulting from the injury to GSMC. Moreover, the court rejected the plaintiffs' contention that they had standing as third-party beneficiaries of the policy. The court held that the complaint lacked any basis to infer that the plaintiffs met the elements establishing status as third-party beneficiaries. Specifically, there was no basis to infer any clear intent that Continental's coverage of GSMC would confer a direct benefit on the plaintiffs, nor that the policy imposed any duty beyond payments to each insured on that insured's own claims. Accordingly, the court dismissed those counts pursuant to Rule 12(b)(1).
> G & S Holdings LLC v. Cont'l Cas. Co., 697 F.3d 534 (7th Cir. 2012)

The Appellate Court agreed with the District court that the claims in the complaint were not premised on any obligation owed directly to the plaintiffs by Continental, but rather are premised on Continental's failure to meet its obligations under the policy to pay GSMC for damages arising from the explosion. The plaintiffs' damages arose only indirectly from that failure, in that the failure to make timely payment contributed to the failure of GSMC's business, and that failure of GSMC's business resulted in financial and business losses for the plaintiffs.

In its reasoning, the Appellate court held that the plaintiffs were not the real parties in interest because they did not seek recovery for an injury they suffered directly, but rather sought redress for derivative harm resulting from the injury to GSMC. Moreover, the court rejected the plaintiffs' contention that they had standing as third-party beneficiaries of the policy. The court held that the complaint lacked any basis to infer that the plaintiffs met the elements establishing status as third-party beneficiaries. Specifically, there was no basis to infer any clear intent that

Continental's coverage of GSMC would confer a direct benefit on the plaintiffs, nor that the policy imposed any duty beyond payments to each insured on that insured's own claims. Accordingly, the court dismissed those counts pursuant to Rule 12(b)(1).

In the case at bar, Plaintiffs allege that they were personally injured pursuant to the Sales Agreement, yet they assert jurisdiction pursuant to the forum selection clause in the Stock Purchase Agreement. The Plaintiffs are not the real parties in interest to the Stock Purchase Agreement between CCC and Mark Miller. Thus, they cannot assert jurisdiction pursuant to the Stock Purchase Agreement. Since there is no forum selection clause in the Sales Agreement, and since there were insufficient contacts between Miller and the State of Illinois to satisfy federal and Illinois due process, in accordance with the Illinois 'long-arm' statute, Plaintiffs have no basis for asserting that this Court has jurisdiction over Mark Miller.

## CONCLUSION

This Court does not have personal jurisdiction over Mark Miller, nor is there an enforceable forum selection clause in any contract that the Plaintiffs can assert that will demonstrate that this Court has jurisdiction over Mark Miller for their claims for damages.

Respectfully Submitted,

s/ Thomas F. Burke

Attorney for the Defendant

Thomas F. Burke, P.C.
104 N. Garfield Avenue
Hinsdale, IL 60521
Email: tburke104@att.net