## STOCK PURCHASE AGREEMENT

AGREEMENT (the "Agreement") made as of October 14, 2019, by and among Capitol Capital Corporation (the "Seller") and Mark Miller or its designee (the "Buyer"), and approved by a nonparty, the issuer, Indo Global Exchange(S) Pte, Ltd., a publicly traded company trading on the OTC Markets under the symbol IGEX, a Nevada corporation (the "Company").

### WITNESETH:

WHEREAS, the Buyer desires to purchase from the Seller and the Seller desires to sell to the Buyer 166,750,000 Shares of common stock in the Company (the "Stock").

WHEREAS, the Stock price has fluctuated widely over the past one-year period and remains a very thinly traded stock. The Company does not maintain audited financial statements, is not current in its filings with OTC markets is considered by SEC standards as a "penny stock," making it very difficult, if not impossible, to deposit such shares at a brokerage account, let alone trade the shares, all of which render the shares far less valuable than the stated market price per share applicable to shares which are tradable.

WHEREAS, Buyer wishes to purchase the Stock from the Seller and the Seller desires to sell the Stock to the Buyer, for $102,000, subject to adjustments in the event of dramatic stock price changes.

NOW THEREFORE, in consideration of the mutual covenants and promises herein contained and upon the terms and conditions hereinafter set forth, the parties hereto, intending to be legally bound, agree as follows:

1. **PURCHASE AND SALE OF THE STOCK.**

Upon the terms and conditions herein contained, at the Closing (as hereinafter defined), the Seller hereby sells, assigns and transfers to the Buyer and the Buyer agrees to purchase from the Seller all of the rights of the Seller under the Stock, as of the date of the Closing, and all rights thereto, free and clear of all liens, claims, pledges, mortgages, restrictions, obligations, security interests and encumbrances of any kind, nature and description. The Seller assumes no obligation whatsoever concerning the prospect of the stock being susceptible to deposit in the brokerage account.

2. **CONSIDERATION.**

a. The purchase price of the Stock shall be $102,000 (the "Purchase Price"), payable in the form of an interest-bearing promissory note (the "Promissory Note"), issueable within two business days of a deposit and clearing of the Stock into a brokerage account (the "Issuance Date"), so as to be ready for trading. Interest shall be payable at the rate of .5% per month, subject to the Buyer being able to deposit the Stock within 45 days of the receipt of the Stock from the Seller.

b. In the event that the Stock price declines significantly such that the Buyer is unable to sell the Stock for at least 87.5% of the amount of the Purchase Price, then the amount of the Purchase Price shall be reduced by the amount of the excess of the Purchase Price over 80% of the actual sales proceeds, net of brokerage fees and other selling costs.

c. In the event that the sales proceeds exceed an amount equal to 1.2 times the amount of the Purchase Price, then the amount of the Purchase Price shall increase by an amount equal to 50% of the amount by which the sales proceeds, net of brokerage fees and other selling costs, exceed the Purchase Price.

3. **CLOSING.**

The closing of the transactions contemplated by this Agreement (the "Closing") shall take place upon execution of this Agreement, at which point, the Seller shall cause the Stock to be delivered to the Buyer, or the Buyer's broker.

4. **REPRESENTATIONS AND WARRANTIES OF SELLER.** The Seller hereby represents and warrants to the Buyer as follows:

4.1 Status of the Seller and the Stock. The Seller is the beneficial owner of the Stock, and such the Stock is free and clear of all mortgages, pledges, restrictions, liens, charges, encumbrances, security interests, obligations or other claims. The issuer of such shares, the Company, hereby approves this Agreement, as indicated below.

4.2 Authorization: Enforcement. (i) This Agreement has been duly executed and delivered by the Seller and (ii) this Agreement constitutes a legal, valid and binding obligation of the Seller enforceable against the Seller in accordance with its terms. The Transferred Rights reflect the rights afforded to stockholders generally and are legally transferable to Buyer.

4.3 No Conflicts. The execution, delivery and performance of this Agreement by the Seller and the consummation by the Seller of the transactions contemplated hereby (including, without limitation, the sale of the Stock to the Buyer) will not violate or conflict with, or result in a breach of any provision of, or constitute a default (or an event which with notice or lapse of time or both could become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, note, bond, indenture or other instrument to which Sellers is a party. The Seller is not required to obtain any consent, authorization or order of, or make any filing or registration with, any court, government agency, regulatory agency, self-regulatory organization or stock market or any third party in order for it to execute, deliver or perform any of Seller's obligations under this Agreement in accordance with the terms hereof.

4.4 Rule 144 Matters. Seller is not, and for a period of at least ninety (90) days prior to the date hereof, has not been an "Affiliate" of the Company, as that term is defined in Rule 144 of the 1933 Act. The Seller is also not a person that directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with the Company. Subsequent to the Closing, Seller will take no action

which would adversely affect the tacking for the benefit of the Buyer of Seller's holding period under Rule 144. The Seller has no reason to believe that the Stock cannot be issued without legend. The Stock has been paid for in full, more than three years ago.

5. **REPRESENTATIONS, WARRANTIES AND ACKNOWLEDGEMENTS OF THE BUYER.** The Buyer hereby represents warrants and acknowledges to the Seller as follows:

 5.1 *Sophisticated Investor*. The Buyer is a sophisticated investor. The Buyer has sufficient knowledge and experience of financial and business matters to able to evaluate, and has made its own investigation of, the merits and risks of purchasing the Stock, and has had substantial experience in previous private and public purchases or securities and public purchases of securities.

 5.2 *Authorization: Enforcement*. (i) This Agreement has been duly executed and delivered by the Buyer and (iii) this Agreement constitutes a legal, valid and binding obligation of the Seller enforceable against the Buyer in accordance with its terms.

6. **Miscellaneous.**

 6.1 *Binding Effect, Benefits*. This Agreement shall insure to the benefit of, and shall be binding upon, the parties hereto and their respective successors and permitted assigns. Except as otherwise set forth herein, this Agreement may not be assigned by any party hereto without the prior written consent of the Company and of the other party hereto. Except as otherwise set forth herein, nothing in this Agreement, expressed or implied, is intended to confer on any person other than the parties hereto or their respective successors and permitted assigns any rights, remedies, obligations or liabilities under or by reason of this Agreement.

 6.2 *Notices*. All notices, requests, demands and other communications which are required to be or may be given under this Agreement shall be in writing and shall be deemed to have been duly given when delivered in person, or transmitted by telecopy or telex, or upon receipt after dispatch by certified or registered first class mail, postage prepaid, return receipt requested, to the party to whom the same is so given or made, at the following addresses (or such others as shall be provided in writing hereinafter):

 (a) If to the Seller, to: David Goulding
           davegoulding72@gmail.com

 (b) If to the Buyer, to: Mark Miller
           mjbuildersmn@gmail.com

 6.3 *Entire Agreement*. This Agreement constitutes the entire agreement and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof.

 6.4 *Further Assurances*. After the Closing, at the request of either party, the other party shall execute, acknowledge and deliver, without further consideration, all such further assignments, conveyances, endorsements, deeds, powers of attorney,

consents and other documents and take such other action as may be reasonably requested to consummate the transactions contemplated by the Agreement.

6.5 Headings. The section and other headings contained in this Agreement are for reference purposes only and shall not be deemed to be a part of this Agreement or to affect the meaning or interpretation of this Agreement.

6.6 Counterparts. This Agreement may be executed in any number of counterparts, each of which, when executed, shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

6.7 Government Law. This Agreement shall be construed as to both validity and performance and enforced in accordance with and governed by the laws of the State of Illinois, without giving effect to the conflicts of law principles thereof and any suit shall be brought in the state of Illinois, either in the County of Cook or Lake.

6.8 Severability. If any term or provision of this Agreement shall to any extent be invalid or unenforceable, the remainder of this Agreement shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

6.9 Amendments. This Agreement may not be modified or changed except by an instrument or instruments in writing executed by the parties hereto.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

**SELLER (Capitol Capital Corporation):**

_____
David Goulding

**BUYER (Mark Miller):**

_____
Mark Miller