UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID GOULDING, HOWARD SALMON, ROBYN GOULDING, and JOHN O'SHEA | ) ) ) |
| | ) Case No. 1:22-cv-05224 |
| Plaintiffs, | ) ) Judge Sharon Johnson Coleman |
| v. | ) ) |
| MARK MILLER, | ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs David Goulding, Howard Salmon, Robyn Goulding, and John O'Shea (collectively "Plaintiffs") filed a three-count first amended complaint against Defendant Mark Miller ("Defendant"), alleging that Defendant unlawfully sold stock without distributing the proceeds to the Plaintiffs in accordance with an executed agreement [14]. Defendant now moves to dismiss the first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing, 12(b)(2) for lack of personal jurisdiction, and 12(b)(6) for failure to state a claim [19]. For the following reasons, Defendant's motion to dismiss Plaintiffs first amended complaint is denied.

**Background**

Plaintiffs allege David Salmon and David Goulding were principal owners and the sole directors of Capitol Capital Corporation ("CCC") from its formation in 2012 until approximately June 20, 2020. In June 2020, Salmon resigned after appointing Goulding as President of CCC. During that same month, Goulding transferred, control of all CCC's officership and directorship, to

1

Defendant who prior to that time was not legally authorized or permitted to act on behalf of CCC. The transfer did not include stock shares or other equity.

Plaintiffs allege that on or around August 5, 2016, CCC held two promissory notes issued by Indo Global: (1) a convertible promissory note to Dermot Monaghan ("Monaghan Note"); and (2) a $100,000 8% Convertible Redeemable Note (the "$100,000 Note"). On or around July 17, 2019, CCC exercised its option to convert the Monaghan Note and the $100,000 Note in return for 680,000,000 shares of Indo Global (the "Shares.") Each of the Plaintiffs and the Defendant executed an "Agreement" which specified how parties to the Agreement would divide the Share's sales proceeds. Plaintiffs allege that although Defendant did not contribute to the acquisition of the Shares, he was included in the Agreement due to his oral promise to sell the Shares for the benefit of the parties. The Agreement provided:

> WHEREAS, while this Agreement contemplates that Capitol Capital Corporation will pay other parties to this Agreement from income derived from the Shares, the Shares shall belong solely to Capitol Capital Corporation , and no other party shall have any rights or ownership in or to the Shares themselves, including, without limitation, no rights or ownership in or to the Shares themselves, including, without, limitation, no right to vote such Shares, no control, no right to influence the Company or its management, no right to possession, no right to sell or to otherwise dispose of the Shares.

Plaintiffs allege that on or around October 14, 2019, Defendant entered into a Stock Purchase Agreement ("SPA") with CCC for the purchase of 100,650,000 shares of Indo Global common stock for $102,000.00 Paragraph 6.7 of the SPA provides as follows:

> Government Law: This Agreement shall be construed as to both validity and performance and enforces in accordance with and governed by the laws of the State of Illinois, without giving effect to the conflicts of law principles thereof and any suit shall be brought in the state of Illinois, either in County of Cook or Lake.

On March 23, 2022, a Securities Exchange Commission registered Stock Transfer Agent of Indo Global informed one of the Plaintiffs' attorneys that between October 17, 2019 and December 15, 2019 a total of 872,260,000 shares of Indo Global common stock (the "Stolen Stock") were

issued to CCC. Plaintiffs allege that Defendant admitted that he sold the Stolen Stock, which according to Plaintiffs' calculations amounts to approximately $830,000.00 based on the average selling price per share. Plaintiffs further allege that despite the terms of the Agreement, Defendant sold Stolen Stock without providing any proceeds to the Plaintiffs and previously denied selling any of the Stolen Stock.

On September 26, 2022, Plaintiffs filed a complaint. On December 19, 2022, Plaintiffs filed a first amended complaint. Defendant now moves to dismiss Plaintiff's first amended complaint pursuant to this Court pursuant to Sections 12(b)(1), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) asks the court to dismiss an action over which it allegedly lacks subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorus, Ltd. v. Angus Chem. Co.,* 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn–Chem, Inc. v. Agrium, Inc.,* 683 F.3d 845 (7th Cir.2012). All reasonable inferences are drawn in favor of the plaintiff, and all well-pleaded allegations are accepted as true. *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 554 (7th Cir. 1999). Finally, when considering a Rule 12(b)(1) motion to dismiss, the court may look beyond the allegations of the complaint and may consider other submitted evidence. *See Johnson v. Apna Ghar, Inc.,* 330 F.3d 999, 1001 (7th Cir. 2003) (quoting *id.*)

A motion to dismiss under Rule 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020). Although the plaintiff bears the burden of establishing personal jurisdiction, when ruling on a Rule 12(b)(2) motion to dismiss based on the submission of written materials, a plaintiff need only make a prima facie showing of personal jurisdiction. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir.

3

2019). "In evaluating whether the prima facie standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.' " *Curry*, 949 F.3d at 393 (citation omitted).

**Discussion**

*A. Standing*

Initially, Defendant argues that Plaintiffs' lack standing because the Plaintiffs are not the real parties in interest to the Stock Purchase Agreement between CCC and Mark Miller.

To establish standing, a party must show an injury in fact traceable to the conduct of the defendant and likely to be redressed by the relief sought. *See, e.g., Lujan v. Defs. of Wildlife*, 504 U.S. 555, 583, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A party is a real party in interest if the party simply possesses the particular right to be enforced. Fed.R.Civ.P. 17(a). The distinction between the real party in interest doctrine and Article III standing is subtle and often eludes courts and litigants, but they comprise distinct doctrines nonetheless. *See Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 756 (7th Cir.2008) (warning that real party in interest doctrine should not be confused with Article III standing); *AP Siding & Roofing Co. v. Bank of New York Mellon*, 548 B.R. 473, 484 (N.D. Ill. 2016) (Tharp Jr., J.).

Here, Defendant's "standing" argument is, in fact, an argument about the real party in interest, which is unrelated to whether Plaintiffs suffered an injury in fact sufficient to give rise to Article III standing. *Rawoof,* 521 F.3d at 756 (indirect injury to shareholder sufficient to confer standing even though corporation was the real party in interest). Plaintiffs have alleged that an agreement was made between the Plaintiffs, Defendant, and CCC explaining how proceeds from the sale of the Stolen Stock would be shared between the parties if sold and that Defendant sold the Stolen Stock without paying the Plaintiffs their entitled portions. This is a redressable injury directly

4

traceable to Defendant's conduct. Therefore, Plaintiffs have satisfied the requirements of Article III standing.

Thus, Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing is denied.

B.  *Personal Jurisdiction*

It is well-established that personal jurisdiction is contingent upon the defendant having the requisite "minimum contacts" with the district to subject a defendant to legal proceedings in Illinois. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The requirement of personal jurisdiction is waivable if the parties contract to proceeding in a particular forum. *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 589 (7th Cir. 2005). A forum selection clause, like any other contractual provision, is presumed valid " 'unless it is subject to any of the sorts of infirmity, such as fraud and mistake, that justify a court's refusing to enforce a contract.' " *Playboy Enters. Int'l, Inc. v. Smartitan (Singapore) Pte. Ltd.*, 804 F.Supp.2d 730, 734 (N.D. Ill. 2011)(Aspen, J.)(citing *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375 (7th Cir. 1990)).

Here, Plaintiffs allege that Defendant submitted to jurisdiction in Illinois by executing the SPA on October 14, 2019, which included a forum selection clause. Defendant argues that the forum selection clause is unenforceable as it is not part of a valid contract. Specifically, Defendant claims that that Goulding's signature was a condition precedent to the execution of their contract, and that Goulding's failure to sign meant that there was no valid contract between the parties. Defendant further claims that there was no performance on that contract by either party, rendering the contract void.

Under Illinois law, a valid contract requires an offer, acceptance, and consideration. *Van Der Molen v. Washington Mut. Fin., Inc.*, 359 Ill.App.3d 813, 296 Ill.Dec. 206, 835 N.E.2d 61, 69 (2005). In addition, there must be mutual assent by the parties—i.e., a meeting of the minds—to the essential

5

terms and conditions of the contractual relationship. *See IMI Norgren, Inc. v. D & D Tooling Mfg., Inc.,* 306 F.Supp.2d 796, 801–02 (N.D. Ill. 2004) (Denlow, Mag. J.). A written contract generally does not become binding until it is signed by the parties. *See Sterdjevich v. RMK Mgmt. Corp.*, 343 Ill.App.3d 1, 277 Ill.Dec. 780, 796 N.E.2d 1146, 1157 (2003). However, it has long been settled that " '[t]he object of a signature is to show mutuality or assent, but these facts may be shown in other ways, as, for example, by acts or conduct of the parties.' " *Consol. Bearings Co. v. Ehret–Krohn Corp.,* 913 F.2d 1224, 1231 (7th Cir. 1990) (quoting *Lynge v. Kunstmann,* 94 Ill.App.3d 689, 50 Ill.Dec. 146, 418 N.E.2d 1140, 1144 (1981)).

Here, the parties' conduct demonstrates their mutual assent. Plaintiffs alleged that they provided Defendant with the 166,750,000 shares sold under the SPA, which was part of the 680,000,000 Stolen Shares at issue. Defendant claims that there was no performance because he was unable to sell the shares. However, Defendant does not allege that he was never provided the shares described under the SPA, merely that he was unable to satisfy his obligation to sell the shares. Clearly, Plaintiffs actions in providing the shares to Defendant and Defendant's actions in accepting the shares from the Plaintiffs for the purposes of trying to sell the shares demonstrates the parties mutual assent to be bound by the SPA, including the forum selection clause. Thus, Plaintiff's have satisfied the requirements for showing this Court has personal jurisdiction over Defendant.

Accordingly, Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction is denied.

C. *Failure to State a Claim*

Lastly, Defendant asserts that Plaintiffs have failed to state a claim under Rule 12(b)(6) but does not make an argument as to why their claims are insufficient. Where a party offers only cursory support of its argument without adequate explanation, the Court "will not fill this void by crafting arguments and performing the necessary legal research." *Shipley v. Chicago Bd. of Election Comm'rs*, 947

F.3d 1056, 1063 (7th Cir. 2020) (quotation omitted). Because of Defendant's failure to make an argument, the Court does not engage with this claim. Accordingly, Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is denied.

**Conclusion**

For these reasons, Defendant's motion to dismiss is denied.

IT IS SO ORDERED.

Date: 9/14/2023

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge