UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

David Goulding, Howard Salamon, Robin Goulding )
and John O'Shea                               )
                                              )   Case No. 1:22-cv-05224
    Plaintiffs          `                     )
                                              )   Judge Sharon Johnson Coleman
    vs.                                       )
                                              )
Mark Miller                                   )
                                              )
    Defendant                                 )

**RESPONSE TO PLAINTIFFS' MOTION TO COMPEL RESPONSES TO DISCOVERY**

Now Comes the Defendant, Mark Miller, by his attorneys, and responds to the Plaintiffs' Motion to Compel Responses to Discovery as follows:

**Plaintiffs' Request, Defendant's Response and Plaintiffs' Argument for each Request**

**Request # 1** *Copies of the Defendant's federal income tax returns for the most recent three calendar years.*
*RESPONSE: Defendant objects to this production request as overly broad, burdensome, and irrelevant to the cause of action and not likely to lead to relevant documents or information.*

Plaintiffs' Argument

As discussed, these documents are relevant in so far as any income derived from the sales of the alleged stolen stock would very likely show up here.

Defendant's Response

Plaintiffs entire Complaint is based on the allegation that Mark Miller, while acting as the president and sole director of Capitol Capital Corporation ("CCC") converted two notes in return for 680,000,000 shares of Indo Global ("IGEX') and retained for himself the proceeds of the sale rather than distributing the proceeds to the Plaintiffs pursuant to an agreement ("Agreement") entered into on July 17, 2019 (See attached Exhibit 1). The Agreement states that:

> WHEREAS, while this Agreement contemplates that Capitol Capital Corporation will pay other parties to this Agreement from income derived from the Shares, the Shares shall belong solely to Capitol Capital Corporation, and no other party shall have any rights or ownership in or to the Shares themselves, including, without limitation, no right to vote such Shares, no control, no right to influence the Company or its management, no right to possession, no right to sell or to otherwise dispose of the Shares.

Yet, Plaintiffs ignore that language, relying instead on subsequent language in the Agreement that states:

> 2. **The net proceeds on the sale of the 680,000,000 shares issued pursuant to the Debt Settlement Resolution shall be divided as follows:**
>
>    a. **The first $128,102.23 shall be paid 15.4% each, to each of John O'Shea, Howard Salamon, David Goulding and to Randall S. Goulding, 38.57% to Securities Counselors Inc. and 12.5% to each of Mark Miller and Jason Black and thereafter the net sales** proceeds shall **be paid;**
>
>    b. **Thereafter, the division shall be as follows: 37.5% to John O'Shea, and 12.5% to each of Howard Salamon, David Goulding, Randall S. Goulding, Mark Miller and Jason Black.**

Plaintiffs have not produced any Debt Settlement Resolution that is referred to in the Agreement. More importantly, the Agreement clearly states that the shares of IGEX belong to Capitol Capital Corporation[1] ("CCC") and that no other party has the rights or ownership in the shares. Corporate officers owe a fiduciary duty of loyalty to their corporate employer. *Everen Securities v. A.G. Edwards & Sons*, 308 Ill. App. 3d 268, 276, 719 N.E.2d 312 (3rd Dist. 1999). Therefore, if Defendant had paid the Plaintiffs pursuant to the Agreement while excluding other shareholders from the proceeds of the transaction, Defendant would be in breach of his fiduciary duties to the corporation and to the other shareholders and also in collusion with Plaintiffs to commit fraud.

---

[1] There are approximately 350 shareholders who own common stock in Capitol Capital Corporation, as exemplified by the list produced by Defendant in Bates Stamp #D00001-D00068. The documents indicate that the initial Ownership Date was September 12, 2012 and the documents are "as of" March 25, 2022. (see attached Exhibit 2).

Plaintiffs have not set forth any facts that would require Defendant to produce his personal tax returns for the requested years of 2020, 2021 and 2022. The allegations in their Complaint state that Randall Goulding, one of the Plaintiffs' attorneys, was informed by the stock transfer agent for IGEX that 872,260,000 shares of IGEX common stock were issued to CCC (Plaintiffs' First Amended Complaint ("FAC"), paragraph 23). The FAC further states that all of the 872,260,000 shares of IGEX common stock, which included the 680,000 shares claimed by Plaintiffs, were sold (FAC paragraphs 25) and that none of the proceeds of the sale of the 872,260,000 shares of IGEX stock were paid to any of the Plaintiffs (FAC paragraph 40). Plaintiffs further allege that Defendant breached the Agreement by not distributing 75% of the sales proceeds from the IGEX sale to them (FAC paragraph 50) and thus were damaged in the amount of $830,000,000[2].

As set forth above, Defendant could not have distributed the proceeds of the IGEX stock to Plaintiffs without breaching his fiduciary duties to CCC and all its shareholders. In essence, Plaintiffs are alleging that Defendant did not assist them in defrauding the other common shareholders of CCC out of the benefits of the sale of IGEX stock.

The Seventh Circuit Court of Appeals has addressed the issue of compelling producing personal tax in discovery of civil lawsuits. In *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, (7th Cir. 1992), the court noted that although tax returns in the hands of a taxpayer are not privileged, nonetheless, a variety of courts, including district courts in this circuit, have opined that a public policy against unnecessary public disclosure. *Id*. at p. 74-75. The court found that the plaintiff

---

[2] Defendant has produced documents in discovery that indicate that the 680,000,000 shares of IGEX in dispute were sold for $120,825.00 and that none of the proceeds of the sales went to CCC. (See attached Exhibit 3, D00221-D00223, D00249-D263).

put the level and sources of his income at issue both by claiming to be a dealer and by claiming mitigation of damages following the termination of his contract.

Similarly, in *Fields v. General Motors Corp., No. 94 C 4066, 1996 U.S. Dist. LEXIS 206, 1996 WL 14040, at *3-4 (N.D. Ill. Jan. 14, 1996)*, the district court granted the defendant's motion to compel production of the plaintiffs' tax returns where the plaintiffs' claims for lost profits over the defendant's alleged breach of contract placed in issue their financial injury and whether they mitigated that injury, and thus rendered their tax returns discoverable.

In *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515 (N.D. Okla. 2003), the court distinguished Fields and declined to order production of personal tax returns because the plaintiff's in *Evans* had not placed their income in issue, as they were not seeking damages in the form of lost income, but rather financial loss to the value of their home in a lawsuit against an insurer over coverage for losses from two fires that had damaged the home. 216 F.R.D. at 517-18.

The court in *Johnson v. Soo Line R.R. Co.*, 2019 U.S. Dist. LEXIS 146051, in addressing the issue of tax returns in discovery, noted:

> A litigant's compelled production of income *tax returns* is indeed burdensome… While not privileged, "[i]ncome *tax returns* are highly sensitive documents; that is why the Commission cannot get the appellants' *tax returns* directly from the Internal Revenue Service. *Id*. at 7.

In addition to relevance, the court noted that there should be a balance between the need for the tax returns with the burden of producing them.

In the case at bar, Plaintiffs allege that Defendant failed to deliver to them the proceeds of the sales of IGEX stock. Plaintiffs were common shareholders of CCC stock, and thus had no more right to the proceeds than other shareholders. The proceeds of the IGEX stock were kept by CCC and not distributed to Defendant. Thus, since Defendant did not receive the proceeds as income, his tax returns are irrelevant to the transactions. Plaintiffs' argue in their Motion to

Compel that the tax returns documents "are relevant in so far as any income derived from the sales of the alleged stolen stock would very likely show up here", is unpersuasive, not based on any facts and contrary to the documents produced by Defendant in discovery.

**Request # 2** *All documents and communications related to accounts which the Defendant has held either directly or indirectly in any financial institution or brokerage company during the most recent three calendar years, including without limitation all monthly or quarterly statements, and cancelled checks for twelve months prior to the date of hearing.*
*RESPONSE: Defendant objects to this production request as overly broad, burdensome, and irrelevant to the cause of action and not likely to lead to relevant documents or information.*

Plaintiffs' Argument

As discussed, these documents are relevant in so far as any transactions related to the alleged stolen stock would presumably show up here.

Defendant's Response

Defendant's response to Plaintiffs' Request #1 is also applicable to Plaintiffs' Request #2.

**Request # 3** *All documents and communications related to any interest which the Defendant has ever owned or controlled, either directly or indirectly, in any business, including without limitations Capitol Capital Corporation, in any jurisdiction whatsoever.*
*RESPONSE: Defendant objects to this production request as overly broad, burdensome, and irrelevant to the cause of action and not likely to lead to relevant documents or information. Notwithstanding said objection, Defendant agrees to produce the requested documents regarding Capitol Capital Corporation.*

Plaintiffs' Argument

In your Response you agreed to produce all the relevant documents regarding CCC. Please let us know if you have produced these, and if so please direct us to the specific documents that are responsive. In addition, please provide all documents related to Miller's ownership of Indo Global as these would also be highly relevant.

Defendant's Response

As discussed in the meet and confer conference, Defendant has produced all documents in his possession relating to CCC. Defendant does not have any ownership in Indo Global.

**Request # 5** *All documents and communications related to any trusts in which the Defendant holds any beneficial interest, vested or future, including without limitation, copies of such trust agreements.*

*RESPONSE: Defendant objects to this production request as overly broad, burdensome, and irrelevant to the cause of action and not likely to lead to relevant documents or information.*

Plaintiffs' Argument

We accept your objection in part. However ,we still have a right to such information to the extent any proceeds, stock transfers etc. related to CCC or Indo Global have in any way touched any such trusts.

Defendant's Response

As discussed in the meet and confer conference, Defendant does not have any beneficial interest

in any trusts.

**Request #8** *All documents and communications related to business accounts receivable, or other sums owed or due to the Defendant.*
*RESPONSE: Defendant objects to this production request as overly broad, burdensome, and irrelevant to the cause of action and not likely to lead to relevant documents or information.*

Plaintiffs' Argument

We accept your objection here in part. However, to the extent any arrangements have been made or are in place pursuant to any sales of CCC or Indo Global shares, this information is highly relevant.

Defendant's Response

As discussed in the meet and confer conference, there are no documents reflecting an arrangement, past or present, for communications related to business accounts receivable.

**Request #10** *All documents and communications related to Capitol Capital Corporation ("CCC-CO"), a Colorado Corporation, and any interest owned directly or indirectly in CCC by Defendant and/or Defendant's wife.*
*RESPONSE: Defendant agrees to produce all documents related to Capitol Capital Corporation ("CCC-CO"), a Colorado Corporation*

Plaintiffs' Argument

Please confirm as you have stated that the documents you produced here are complete. The documents you produced are very generic (The CCC Shareholder list from Securities Transfer Corporation) and there appear to be no emails or communications as required, this seems unlikely.

Defendant's Response

As discussed in the meet and confer conference, the documents produced are complete. As

unlikely as it seems, there are no emails or communications other than the documents produced

by Defendant.

**Request #11** *All documents and communications related to Capitol Capital Corporation ("CCC-WY"), a Wyoming Corporation, and any interest owned directly or indirectly in CCC by Defendant and/or Defendant's wife.*
*RESPONSE: Defendant agrees to produce all documents related to Capitol Capital Corporation ("CCC-WY"), a Wyoming Corporation*

<u>Plaintiffs' Argument</u>

Please confirm as you have stated that the document you produced here are complete. The documents you produced are very generic (The CCC Shareholder list from Securities Transfer Corporation) and there appear to be no emails or communications as required, this seems unlikely.

<u>Defendant's Argument</u>

As discussed in the meet and confer conference, the documents are complete. As unlikely as it seems, there are no emails or communications other than the documents produced by Defendant.

Respectfully Submitted,

<u>*Thomas F. Burke*</u>

Thomas F. Burke

Johnson & Bell, Ltd.
33 W. Monroe Street
27th Floor
Chicago, IL 60603