UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

David Goulding, Howard Salamon, Robin Goulding )
and John O'Shea )
    ) Case No. 1:22-cv-05224
Plaintiffs )
    ) Judge Sharon Johnson Coleman
vs. ) Magistrate Judge Finnegan
    )
Mark Miller )
    )
Defendant )

## MOTION FOR LEAVE TO FILE AFFIRMATIVE DEFENSE
## AND MOTION FOR SUMMARY JUDGMENT

Now comes the Defendant, Mark Miller, by his attorneys and moves for leave to file an Affirmative Defense pursuant to Federal Rules of Civil Procedure ("FRCP") 15 and for Summary Judgment pursuant to FRCP 56 for the following reasons:

### I.    INTRODUCTION

Plaintiffs entire Complaint is based on the allegation that Mark Miller, while acting as the president and sole director of Capitol Capital Corporation ("CCC") converted two notes in return for 680,000,000 shares of Indo Global ("IGEX') and then retained for himself the proceeds of the sale of that IGEX stock, rather than distributing the proceeds to the Plaintiffs, common shareholders of CCC, pursuant to an agreement ("Agreement") entered into on July 17, 2019. Defendant's attorneys became aware through the discovery process that there are approximately 400 common shareholders in CCC. Therefore, any agreement distributing the proceeds to only a select few of the common shareholders would amount to Defendant breaching his fiduciary duties to the

corporation and its other common shareholders and acting as an accomplice to conversion and a fraud on the other common shareholders.

## II. STATEMENT OF FACTS

1. On June 20, 2012, Capitol Capital Corporation ("CCC") became a Wyoming corporation authorized to issue 50,000,000 common shares of stock. Howard Salamon and David Goulding were its officers and directors.

2. On September 12 2012, CCC issued 14,704,244 shares of common stock to approximately 400 shareholders (See attached Exhibit 1).

3. On October 10, 2014, Indo Global Exchange ("IGEX") issued a convertible promissory note to Dermot Monaghan ("the Monaghan Note"),

4. On or about August 5, 2016, CCC purchased from Dermot Monaghan the Monaghan Note.

5. On August 5, 2016, upon the payment of $25,000 by CCC to IGEX, IGEX issued a $100,000.00 8% Convertible Redeemable Note Due February 5, 2017 (the "$100,000 Note") to CCC.

6. As of August 5, 2016, CCC held two notes issued by IGEX, the Monaghan Note and the $100,000 Note, each of which were convertible into shares of IGEX common stock.

7. On or about July 17, 2019, CCC exercised its option to convert both the Monagham

Note and the $100,000 Note in return for 680,000,000 shares of Indo Global (the "Shares").

8.     On July 19, 2019, John O'Shea, CCC, Robyn Goulding, Market Cap Concepts and Mark Miller executed an Agreement (the "Agreement") (See attached Exhibit 2). The Agreement included a provision that the net proceeds of the 680,000,000 shares of IGEX stock were sold, CCC will distribute the proceeds to John O'Shea, Howard Salaman, David Goulding, Randall Goulding, Securities Counselors Inc., Mark Miller and Jason Black.

9.     On August 8, 2019, Howard Salamon resigned as a Director and the President of CCC. David Goulding was appointed the new President of CCC and Mark Miller was appointed as Director/Chairman of the Board.  At the same time, Howard Salamon transferred his common shares in CCC to Mark Miller.

10.    Between November 22, 2019 and December 15, 2019 Mark Miller, on behalf of CCC, sold all 680,000,000 shares of IGEX stock to Tiger Trout Capital LLC for $120,825.00.  The proceeds of the sale of the 680,000,000 shares of IGEX were not distributed pursuant to the Agreement, but instead were deposited into a CCC account (See attached Exhibit 3).

11.    The initial list of shareholders that invested in CCC on September 12, 2012, and still retained common stock as of March 25, 2022 consisted of approximately 400 individuals or entities (See attached Exhibit 1).

## III. LEGAL ARGUMENT

A. The Agreement is unenforceable

Defendant seeks leave to plead the affirmative defense of Illegality because the Agreement is against public policy[1]. The Agreement (See attached Exhibit 2) states that:

> WHEREAS, while this Agreement contemplates that Capitol Capital Corporation will pay other parties to this Agreement from income derived from the Shares, the Shares shall belong solely to Capitol Capital Corporation, and no other party shall have any rights or ownership in or to the Shares themselves, including, without limitation, no right to vote such Shares, no control, no right to influence the Company or its management, no right to possession, no right to sell or to otherwise dispose of the Shares.

Yet, Plaintiffs ignore that language, relying instead on subsequent language in the Agreement that states:

> 2. The net proceeds on the sale of the 680,000,000 shares issued pursuant to the Debt Settlement Resolution shall be divided as follows:
>
>    a. The first $128,102.23 shall be paid 15.4% each, to each of John O'Shea, Howard Salamon, David Goulding and to Randall S. Goulding, 38.57% to Securities Counselors Inc. and 12.5% to each of Mark Miller and Jason Black and thereafter the net sales proceeds shall be paid;
>
>    b. Thereafter, the division shall be as follows: 37.5% to John O'Shea, and 12.5% to each of Howard Salamon, David Goulding, Randall S. Goulding, Mark Miller and Jason Black.

Discovery in this case has revealed that there are approximately 400 shareholders who own common stock in CCC. The document indicates the initial Ownership Date of September 12, 2012, and the current date as of March 25, 2022. (see attached Exhibit 1). Discovery has also revealed that the 680,000,000 shares of IGEX stock were sold by

---

[1] Defendant's counsel was unaware that there were more common shareholders than Plaintiffs until discovery documents were viewed.

CCC and that the proceeds went to the corporation rather than to the Defendant (See attached Exhibit 3).

In essence, Plaintiffs are suing Defendant for fraud and conversion for failing to fulfill the terms of a contract that would amount to a breach of fiduciary duty, conversion and fraud pertaining to the vast majority of CCC's common shareholders by denying CCC shareholders the proceeds of the sale of IGEX stock.

Enforcement of illegal contracts is against Illinois public policy. *See Vine St. Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 296, 856 N.E.2d 422, 305 Ill. Dec. 617 (2006); *Gamboa v. Alvarado*, 407 Ill. App. 3d 70, 75, 941 N.E.2d 1012, 347 Ill. Dec. 143 (2011) The public policy of the State of Illinois is found not only in the constitution, statutes, and long-standing case law (*Clark v. Children's Memorial Hospital*, 2011 IL 108656, ¶ 79), 955 N.E.2d 1065, 353 Ill. Dec. 254, but can also be found in federal law (*Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502, 506, 485 N.E.2d 372, 92 Ill. Dec. 561 (1985)).

Caselaw rulings have held that courts will not enforce an illegal contract or any rights that arise from an illegal contract. *Goodrich v. Tenney*, 144 Ill. 422, 430, 33 N.E. 44 (1893); *Ritacca v. Girardi*, 2013 IL App (1st) 113511, ¶ 32, 996 N.E.2d 236, 374 Ill. Dec. 789. This common law doctrine derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act. *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29 (1987). Illegality of contract is, therefore, a defense against actions seeking enforcement of a contract. *Kim*, 368 Ill. App. 3d at 307.

A contract is illegal where (1) its terms violate Illinois or federal law (see *Gamboa v. Alvarado*, 407 Ill. App. 3d 70, 75, 941 N.E.2d 1012, 347 Ill. Dec. 143 (2011)) or (2) it

requires one or both parties to perform an illegal act (see *St. Louis, J. & C. R. Co. v. Mathers*, 104 Ill. 257, 259 (1882)). The Seventh Circuit has rejected the implication that only a criminal act may be 'illegal conduct,' *Syndicate Sales, Inc. v. Hampshire Paper Corp.,* 192 F.3d 633, 641 (7th Cir.1999).

    Breach of fiduciary duty, fraud and conversion are considered illegal acts in Illinois. Fraud is generally considered a criminal offense, while breach of fiduciary duty and conversion are civil torts that can be pursued in a lawsuit,

    Corporate officers owe a fiduciary duty of loyalty to their corporate employer. *Everen Securities v. A.G. Edwards & Sons*, 308 Ill. App. 3d 268, 276, 719 N.E.2d 312 (3rd Dist. 1999).

    The Seventh Circuit has considered the meaning of fraud as:

Congress intends to incorporate the well-settled meaning of the common-law terms it uses." *Neder v. U.S.*, 527 U.S. 1, 23, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 187, 136 S. Ct. 1989, 195 L. Ed. 2d 348 (2016) (quotations omitted). In other statutes prohibiting fraud, the Supreme Court has explained that "defraud" takes the common-law definition of "fraud." *Neder*, 527 U.S. at 22-23 (mail fraud); *Escobar*, 579 U.S. at 187 (False Claims Act). <u>*CFTC v. Donelson*, 115 F.4th 791, HN 5 (7th Cir. 2024)</u>.

    Quoting Black's Law Dictionary, fraud is generally defined as a "knowing misrepresentation of the truth or a concealment of a material fact to induce another to act to his detriment." Black's Law Dictionary 670 (7th ed. 1999).

    At common law, conversion is the wrongful possession or disposition of another's property as if it were one's own; an act or series of acts or willful interference, without lawful justification, with an item of property in a manner inconsistent with another's right,

whereby that other person is deprived of the use and possession of the property. *In re Karavidas*, 2013 IL 115767, 999 N.E.2d 296.

B. <u>Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure states:

Rule 56. Summary Judgment

(a) MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

There is no issue in dispute that Plaintiffs are attempting to enforce a contract that is illegal because it would result in a breach of fiduciary duty, conversion and fraud. Therefore, Defendant moves for summary judgment on Plaintiffs' cause of action for Breach of Contract (Counts I and II), Conversion (Count III) and Common Law Fraud (Count IV) in their First Amended Complaint.

## IV.     CONCLUSION

This court should allow Defendant to assert an Affirmative Defense of Illegality of Contract and should grant Defendant's Motion for Summary Judgment on all counts in Plaintiffs' First Amended Complaint.

Respectfully Submitted,

/s/ *Thomas F. Burke*

Attorney for the Defendant

Thomas F. Burke
Johnson & Bell, Ltd.
33 W. Monroe Street

Suite 2700
Chicago, IL 60603
burket@jbltd.com