UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID GOULDING, HOWARD SALAMON, ROBYN GOULDING, and JOHN O'SHEA | ) ) ) |
| | ) Case No. 1:22-cv-05224 |
| *Plaintiffs*, | ) ) Judge Sharon Johnson Coleman |
| v. | ) ) |
| MARK MILLER, | ) ) ) |
| *Defendant*. | ) ) |

**ORDER**

Plaintiffs David Goulding, Howard Salamon, Robyn Goulding, and John O'Shea (collectively, "Plaintiffs") bring their suit against Defendant Mark Miller ("Defendant") alleging that Defendant unlawfully sold stock without distributing the proceeds to Plaintiffs in accordance with an executed agreement. As the case currently stands, Defendant has filed a motion for summary judgment, which has been fully briefed since January 2, 2025, and discovery closed on February 18, 2025. Plaintiff now moves for leave to file a second amended complaint ("SAC") seeking to add (1) Capitol Capital Corporation ("CCC") as a plaintiff; (2) Jennifer Miller (who is Defendant's wife) and Market Cap Concepts LLC ("MCC") as defendants; and (3) additional counts against each defendant. For the following reasons, the Court grants in part and denies in part Plaintiffs' motion.

**Background**

As initially pled by Plaintiffs in their amended complaint, Dkt. 14, the general nature of this case is that there was an agreement whereby Defendant, for a fee, was to sell certain shares of stocks on the over-the-counter market on behalf of CCC and Plaintiffs, but Defendant allegedly sold the

1

stock without telling anyone and kept the proceeds for himself.[1] Plaintiffs allege that Howard Salamon and David Goulding were principal owners and the sole directors of CCC from its formation in 2012 until approximately June 20, 2020. In June 2020, Salamon resigned after appointing Goulding as President of CCC. During that same month, Goulding transferred control of all CCC's officership and directorship to Defendant, who, prior to that time, was not legally authorized or permitted to act on behalf of CCC. The transfer did not include stock shares or other equity.

Plaintiffs allege that on or around August 5, 2016, CCC held two promissory notes issued by Indo Global Exchange Pte, Ltd.: (1) a convertible promissory note purchased from Dermot Monaghan ("Monaghan Note"); and (2) a $100,000 8% Convertible Redeemable Note (the "$100,000 Note"). On or around July 17, 2019, CCC exercised its option to convert the Monaghan Note and the $100,000 Note in return for 680,000,000 shares of Indo Global (the "Shares" or the "Stolen Stock"). Plaintiffs and Defendant executed an agreement (the "Agreement") which specified how the parties to the Agreement would divide the proceeds of the sale of the Shares. Plaintiffs allege that although Defendant did not contribute to the acquisition of the Shares, he was included in the Agreement due to his oral promise to sell the Shares for the benefit of the parties. The Agreement provides:

> WHEREAS, while this Agreement contemplates that Capitol Capital Corporation will pay other parties to this Agreement from income derived from the Shares, the Shares shall belong solely to Capitol Capital Corporation, and no other party shall have any rights or ownership in or to the Shares themselves, including, without limitation, no right to vote such Shares, no control, no right to influence the Company or its management, no right to possession, no right to sell o [sic] to otherwise dispose of the Shares."

---

[1] The Court previously summarized Plaintiffs' amended complaint in its order denying Defendant's motion to dismiss. (Dkt. 31.) For the benefit of the parties, the Court largely restates that summary here.

Plaintiffs allege that on or around October 14, 2019, Defendant entered into a Stock Purchase Agreement ("SPA") with CCC for the purchase of 100,650,000 shares of Indo Global common stock for $102,000 Paragraph 6.7 of the SPA provides as follows:

> Government Law. This Agreement shall be construed as to both validity and performance and enforced in accordance with and governed by the laws of the State of Illinois, without giving effect to the conflicts of law principles thereof and any wuit [sic] shall be brought in the state of Illinois, either in County of Cook or Lake.

On March 23, 2022, a Stock Transfer Agent of Indo Global registered with the Securities Exchange Commission informed one of Plaintiffs' attorneys that between October 17, 2019 and December 15, 2019, a total of 872,260,000 shares of Indo Global common stock (680,000,000 of which are the "Stolen Stock") were issued to CCC. Plaintiffs allege that Defendant admitted that he sold the Stolen Stock, which according to Plaintiffs' calculations amounts to approximately $830,000 based on the average selling price per share. Plaintiffs further allege that despite the terms of the Agreement, Defendant sold the Stolen Stock without providing any proceeds to Plaintiffs and despite previously denying selling any of the Stolen Stock.

Plaintiffs filed their complaint before the Court on September 26, 2022, followed by an amended complaint on December 19, 2022. After the Court denied Defendant's motion to dismiss, the parties proceeded through discovery. On October 17, 2024, Defendant filed a motion for summary judgment, which the Court took under advisement after it was fully briefed on January 2, 2025. Limited oral discovery continued while the parties briefed the summary judgment motion, with Plaintiffs deposing Defendant on December 13, 2024, third-party deponent Allen Massey on December 17, 2024, and Jennifer Miller—whom Plaintiffs seek to add to their SAC—on February 19, 2025.

On February 14, 2025, Plaintiffs informed the Court in the parties' joint status report that they intended to file an amended complaint based on testimony elicited during discovery. (Dkt. 100.) Four

3

days later, on February 18, Magistrate Judge McNally declared that discovery was closed and made preparations for settlement discussions. (Dkt. 101.) Plaintiffs filed their motion for leave to file an SAC on March 6, Dkt. 103, which the Court stayed pending a settlement conference scheduled for March 25. (Dkt. 106.) After the parties failed to settle, the Court entered a briefing schedule on Plaintiff's motion, which was fully briefed on April 25.

**Legal Standard**

Federal Rule of Civil Procedure 15(a) provides that, other than within certain time limits, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).[2] Courts typically "freely give leave [to amend] when justice so requires." *Id.* As indicated by its text, "[Rule 15(a)(2)] favors amendment as a general matter." *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 853 (7th Cir. 2022). Still, a district court is within its discretion to deny leave to amend when it has a "good reason" for doing so, such as futility, undue delay, prejudice to another party, or bad-faith conduct. *Id.* (internal quotations omitted).

**Discussion**

In support of their motion, Plaintiffs argue that during the course of discovery and after they filed their amended complaint, Plaintiffs learned that sometime in 2019, Defendant opened a bank account at American National Bank of Minnesota in the name of CCC. (Dkt. 103.) Plaintiffs argue that Defendant opened this account using a December 11, 2019 filing he made with the Colorado Secretary of State on behalf of CCC that falsely claimed that he was the "President," "Director," and "Chairman" of CCC. Defendant also allegedly falsely signed the filing "as holder of 11,400,000 shares" of CCC. As stated by Plaintiffs, "Defendant was not the President, Director or Charman of

---

[2] Federal Rule of Civil Procedure Rule 16(b)(4) provides that a party seeking to amend the pleadings after the expiration of the deadline set forth in a scheduling order must show "good cause" for the late amendment. *Allen*, 41 F.4th at 852. But as no deadline was set in this case, and neither party brings argument under Rule 16(b)(4), the Court evaluates Plaintiffs' motion under the Rule 15(a)(2) standard.

4

CCC at the time, nor did he ever own any shares of CCC. The document was completely unauthorized and never provided to any of the shareholders of CCC." Based on this information, Plaintiffs now allege that Defendant opened this bank account as part of his scheme to defraud Plaintiffs and CCC. Plaintiffs claim that they were not aware of the bank account until discovery closed and only recently confirmed some of the details of this scheme when they deposed Defendant and Jennifer Miller.

Plaintiffs also state that "during the course of recent discovery and preparation for depositions," Plaintiffs learned that Defendant and Miller fraudulently "negated" all the common shares of CCC. Plaintiffs confirmed this negation, which had the effect of "hijack[ing] complete control of CCC," through public documents that were filed with the Colorado Secretary of State on August 6, 2023. (*Id.*) Plaintiffs further argue that "[Defendant] himself seemed to confirm the fraudulent filings during his deposition" and filed more fraudulent documents with the Colorado Secretary of State only minutes prior to his deposition. Finally, Plaintiffs state that Defendant confirmed in his deposition that he paid MCC $62,412.60 from the sale of the Stolen Stock. According to Plaintiffs, MCC was a party to the Agreement and "at best" had the right to $15,103.12. As such, Plaintiffs argue that MCC breached the Agreement.

In sum, the gist of Plaintiffs' new argument is that Defendant, with the help of Jennifer Miller, fraudulently set up a bank account in the name of CCC and stole the entirety of the rightful shareholders' interest in CCC without authorization, and that MCC breached the original Agreement by accepting money from Defendant that was from the sale of the Stolen Stock. Plaintiffs aver that these actions "were only recently discovered and then confirmed in depositions," and that based on this conduct, "it is clear there is a need for a second amended complaint to add CCC as a Plaintiff and Jennifer Miller and [MCC] as defendants." In addition to supplementing the three existing counts against Defendant with additional facts, Plaintiffs seek to add the following counts in their amended complaint:

5

- As to Defendant: Conversion of CCC Common Stock (Count IV); Fraud and Misrepresentation (Count VI); Breach of Fiduciary Duty (Count VIII); Unjust Enrichment (Count X);

- As to Jennifer Miller: Conversion of CCC Common Stock (Count V); Breach of Fiduciary Duty (Count IX); Unjust Enrichment (Count XI); and

- As to MCC: Breach of Contract (Count VII).

Objecting to the motion, Defendant argues that Plaintiffs provide no valid reason for their late request for an amendment because Plaintiffs have "continuously delayed to prosecute their claims against the Defendant." (Dkt. 111.) Specifically, Defendant argues that a copy of the bank statement for the bank account Defendant opened on behalf of CCC was produced in discovery in September 2024 and that Defendant confirmed that he had opened the account during his deposition on December 13, 2024. Defendant also argues that the allegations related to the filings with the Colorado Secretary of State "set forth totally different claims against [Defendant] and his wife [Jennifer Miller]" than those in Plaintiffs' amended complaint and that Plaintiffs misrepresent Defendant's testimony to assert liability against MCC. According to Defendant, "Plaintiffs['] attempt[] to add additional parties is nothing more than trying to find defendants that have money they can possess." (*Id.*)

Defendant similarly argues that the amended complaint would be futile, cause undue delay and prejudice, and is put forth in bad faith. As to futility, Defendant argues that the Court would lack jurisdiction over Jennifer Miller and that MCC cannot be found liable for breach of contract because it was supposed to be a recipient of the funds under the Agreement. As to undue delay and prejudice, Defendant argues that "Plaintiffs are attempting to add new theories of liability to their case" and that Plaintiffs' SAC "adds information and parties that have no relevance to its Amended Complaint." And as to bad faith, Defendant argues that Plaintiffs' motion "contains false allegations pertaining to

6

when they received information pertaining to a bank account and what [Defendant] actually testified to in his deposition" and therefore is sanctionable under Federal Rule of Civil Procedure 11(c).

To begin, the Court cautions Defendant to be circumspect in alleging a violation of Rule 11 without proper foundation, as doing so may open him to similar, more grounded accusations. The same goes for Defendant's argument that Plaintiffs' amended complaint is motivated by a search for a monied defendant. Furthermore, Defendant's arguments—particularly as to bad-faith conduct and harassment—are largely conclusory and made without the support of the abundance of caselaw on this subject within the Seventh Circuit. When a party offers only cursory support of its argument without adequate explanation, the Court "will not fill this void by crafting arguments and performing the necessary legal research." *Shipley v. Chicago Bd. of Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) (quotation omitted).

This maxim of judicial economy aside, the Court notes that both parties fail to discuss the two elephants in the room implicated by Plaintiffs' motion: Defendant's pending motion for summary judgment, which is fully briefed as of January 2, 2025, and whether additional discovery would be required in light of the proffered SAC. As the Seventh Circuit has emphasized, "prejudice to the nonmoving party caused by undue delay is a particularly important consideration when assessing a motion under Rule 15(a)(2)." *Id.* "An amended pleading is less likely to cause prejudice if it comes without delay or asserts claims related to allegations asserted in prior pleadings." *Allen*, 41 F.4th at 853 (citing *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 832 (7th Cir. 2016)). "Conversely, prejudice is more likely when an amendment comes late in the litigation and will drive the proceedings in a new direction." *Id.* (citing *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 687 (7th Cir. 2014)).

The fact that Defendant's motion for summary judgment is fully briefed, and that discovery has been closed for three months, makes clear that the extensive amendment Plaintiff is requesting

7

would prejudice Defendant. This pending motion for summary judgment aside, adding two new defendants would require service of these defendants and associated responsive pleadings. Assuming Plaintiffs' complaint survived these pleadings, discovery would need to be reopened with these new parties, further extending the lifespan of this already long-standing case.

Finally, although evidence supporting these allegations may have been confirmed during discovery, Plaintiffs' corporate hijacking claims are separate and far removed from what Plaintiffs themselves describe as the "general nature" of the litigation up to this point: Defendant's alleged breach of the Agreement to sell shares of stock on behalf of Plaintiffs. And even if these claims were related, Plaintiffs fail to explain why they only now learned of Defendant's alleged false filings to the Colorado Secretary of State when this information has been publicly available since December 2019, six months before Salamon and Goulding transferred control of all CCC's officership and directorship to Defendant, and the alleged conduct has been ongoing throughout the course of litigation. Plaintiffs' lack of diligence in uncovering this information cannot serve as the basis for an eleventh-hour amendment of their operative complaint.

Filed at the close of discovery and in the wake of a fully briefed motion for summary judgment, Plaintiffs' proposed SAC seeks to expand the scope of litigation to include not only new claims against Defendant but also new parties. At this stage of the case, permitting Plaintiffs' SAC would be "exactly the sort of switcheroo" that the Seventh Circuit counsels against. *Johnson v. Cypress Hill*, 641 F.3d 867, 873 (7th Cir. 2011) (citing *Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 793 (7th Cir. 1999)). "There must be a point at which a plaintiff makes a commitment to the theory of his case." *Id.* (quoting *Johnson v. Methodist Med. Ctr. of Illinois*, 10 F.3d 1300, 1304 (7th Cir. 1993). For Plaintiffs, that point has long passed.

**Conclusion**

For these reasons, the Court grants in part and denies in part Plaintiffs' motion for leave to file a second amended complaint [103]. Plaintiffs are permitted to file a second amended complaint with information gained through the close of discovery that conforms with the counts asserted against Defendant in their amended complaint [14]. Plaintiffs are not permitted to add Capitol Capital Corporation as a plaintiff, Jennifer Miller and Market Cap Concepts, LLC as defendants, nor the corresponding counts against Defendant, Jennifer Miller, and Market Cap Concepts, LLC identified in their motion. Plaintiffs are to file their second amended complaint by 5/13/2025. The in-person status hearing set for 5/13/2025 at 10:15am remains as scheduled. Parties should be prepared to discuss whether they intend to supplement Defendant's pending motion for summary judgment with information gained through the close of discovery [83] and whether Plaintiffs intend to file a cross-motion for summary judgment based on the same.

**IT IS SO ORDERED.**

Date: 5/9/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge