**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| David Goulding, Howard Salamon, | ) | |
| Robyn Goulding, and | ) | |
| John O'Shea., | ) | Case No. 1:22-cv-05224 |
| Plaintiffs, | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| Mark Miller, | ) | |
| Defendant. | ) | |

<u>**PLAINTIF'S MEMORANDUM OF LAW IN SUPPORT OF IT'S MOTION FOR**</u>
<u>**SUMMARY JUDGMENT**</u>

NOW COMES, Plaintiffs, by and through their attorneys, Davis & Carter, LLC, and submits this memorandum of law in support of its Motion for Summary Judgment pursuant to their Third Amended Complaint as follows:

<u>**INTRODUCTION**</u>

To summarize Plaintiffs' allegations in the case, Defendant ("Defendant" or "Miller") represented at some point around 2019 that he could help Plaintiffs sell their shares of IGEX on the over-the-counter stock market. Transactions on the over-the-counter market can often be difficult, with trades often occurring via methods such as phone calls, chat rooms, in-person meetings and other methods not employed on larger exchanges trading publicly held shares. Because of this, Plaintiff was amenable to authorizing Defendant Miller to employ his self-described connections and "expertise" to sell the IGEX shares on their behalf. Thus, the Parties entered into a written Agreement on July 17, 2019 memorializing their understanding. See <u>Exhibit E</u>. Because the individual Plaintiffs were the ones who provided CCC funding for the purchase of what became the Indo Global shares, it was agreed that they be entitled to a large

1

share of the proceeds from the sales of those shares. Little did Plaintiffs know at the time that Miller was attempting to lure them into a fraudulent scheme to steal the entirety of the proceeds from the sale and disenfranchise Plaintiffs from their shares in CCC for himself. Further Plaintiffs did not know at the time that Miller was being investigated criminally and civilly by the SEC for similar schemes[1]

Plaintiffs were unaware that any of the IGEX shares had even been sold by Mark Miller until just prior to this lawsuit. Miller fraudulently led them to believe that he did not sell the shares. Indeed, in response to an email by then CEO David Goulding on January 20, 2020, Mark Miller, falsely denied selling any of the Indo Global Shares, stating "Nothing further transpired from IGEX." See SOF ¶ 32 & Exhibit M

Plaintiffs also later found out the following: First, sometime in 2019, Defendant opened a bank account at American National Bank of Minnesota in the name of CCC. See SOF ¶ 26 & Exhibit K. At no time did Defendant have the authority to do so. See Affidavits of Howard Salamon and David , Exhibits A & B. At no time until the start of this litigation were Plaintiffs aware of this bank account. Plaintiffs assume for argument that Defendant must have presented some type of false document or made a false statement in order to open up the account. By Defendants own admission, this account received $120,825.00 from a company called Tiger Trout for what Defendant claims was the sale of Indo Global shares on December 16, 2019, and then deposited the money into the un-authorized bank account. The shareholders of CCC never received any of this money nor did any of the Plaintiffs.

---

[1] Miller was criminally convicted pursuant to 21-cv-1445 in the District Court of Minnesota as well found liable for similar actions by the SEC in Minnesota pursuant to 21-cv-01445.

Second, on December 11, 2019, again without any authority, Defendant stealthily reincorporated CCC from what was previously a Wyoming Corporation to a Colorado Corporation. See Colorado filing attached as <u>Exhibit I</u> At the time of the filing, Miller was not an officer or director of CCC; further, Miller provided no notice to any Plaintiff about this filing. Sometime in late 2022, Plaintiffs discovered the Colorado filing was false, that Defendant had lied on the Articles of Organization, falsely declaring that he was the President, Director and Chairman of CCC, and that he owned "11,400,000 shares". See Affidavits of Howard Salamon and David Goulding attached hereto as <u>Exhibits A & B.</u>

The specific nature of the allegations in this case are that Defendant, to the exclusion of Plaintiffs, fraudulently and deceptively sold all or a majority of the IGEX shares, deposited the money in an unknown and unauthorized bank account in the name of CCC, paid himself from that account and re-incorporated CCC in another state to wrest complete control of the company and seize its assets. By doing so Defendant effectively stole the proceeds from the IGEX sales, stole Plaintiffs' shares in CCC and unjustly enriched himself. Quite simply, Defendant should not be able to get away with his scheme. The material facts in this case are clear and uncontested; Plaintiffs are entitled to summary judgment.

**COUNT I- Defendant breached the Agreement by not paying Plaintiffs as required.**

It is axiomatic in Illinois that the elements of a breach of contract claim are (1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) breach of contract by defendant, and (4) resultant injury to the plaintiff. *Zahdan v. Frontline Bus. Enter. Inc.*, 2024 IL App (1st) 221351, ¶ 31, 241 N.E.3d 1040, 1049–50, <u>appeal denied,</u> 244 N.E.3d 228 (Ill. 2024). There is no dispute as the existence of a valid contract. There is no issue that Plaintiff

performed under the contract by signing the shares over for Miller to sell on their and CCC's behalf.

As to Defendant's breach, there is no dispute regarding the fact that Defendant failed to pay any of the proceeds pursuant to the Agreement. Defendant admits this in his own pleading, See Statement of Fact ("SOF") ¶ 31. As part of the Agreement, the first $128,102.23 of the proceeds were to be paid 15.4% each of the Plaintiffs in this case[2]. Defendant was to receive 12.5%. See Agreement, attached hereto as <u>Exhibit E.</u> Instead, Miller had the proceeds deposited into in unauthorized bank account in the name of CCC, an account that nobody from CCC knew about, See SOF ¶¶ 25,26,27,28. He then his profiteering scheme.

Miller now claims he received $120,825.00 on 12/16/19 pursuant to the sale of IGEX Shares to Tiger Trout Capital, SOF ¶27. However, Miller refused to produce any other bank statement other than the one he produced for December of 2019. Based on the testimony of the purchaser of the IGEX shares, Alan Masley, shares were purchased past December of 2019 and into early 2020. Masley's testified Miller received a total of $219,138.75 for the IGEX shares, SOF ¶¶ 29-30. This is an amount almost double what Miller admits to and is commiserate to Plaintiffs' harm.

What's undisputed is that there was valid enforceable contract, Plaintiff's performed by permitting Defendant to sell the IGEX shares, and Defendant breached by failing to pay Plaintiff's their share as per the Agreement. Plaintiffs where damaged monetarily by not receiving the amounts they were entitled to.

---

[2] The shares of Securities Counselors Inc. were sold to Plaintiff Robyn Goulding after the Agreement was issued and prior to this lawsuit being filed.

**COUNT II- Defendant breached the SPA Agreement.**

The facts pursuant to the breach of the SPA Agreement are also undisputed; Miller never paid for the rights for the shares pursuant to the SPA , SOF ¶¶ 16,17. Yet, Miller went ahead and sold shares and pocketed the proceeds for himself (through the unauthorized and undisclosed bank accounts of CCC).

The SPA was valid contract, whereby for $102,000.00 (via the issuance by Miller of promissory note) Miller was to receive 166,750,00 shares of IGEX. Miller breached the contract by not paying the consideration of $102,000.00 or issuing a note for the same amount as required. Miller admits this in his deposition, See Exhibit H, Pg. 71.  Further , Miller went on to sell the 166,750,00 shares of IGEX to Tiger Trout; as Miller sold far more than the 680,000,000 shares called for in the Agreement, SOF ¶¶ 29-30.

Plaintiffs performed per the SPA by converting/issuing the IGEX shares and allowing Miller to sell them. Plaintiffs were damaged as third party beneficiaries to the Contract, as Miller sold the IGEX shares for his own benefit; shares to which only Plaintiff's had the right to the proceeds of.

There is no material facts in dispute here. Miller had no right to these shares. Summary judgment as to Count II should be granted to Plaintiffs.

**COUNT III- Defendant converted the IGEX shares to which Plaintiffs had the right to.**

Conversion is defined as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Restatement (Second) of Torts § 222A (1965). " The essence of an action for conversion is the wrongful deprivation of property from

5

the person entitled to possession. " *In re Thebus*, 108 Ill. 2d 255, 260, 91 Ill.Dec. 623, 483 N.E.2d 1258 (1985) (quoting *Farns Associates Inc. v. Sternback*, 77 Ill. App. 3d 249, 252, 32 Ill.Dec. 722, 395 N.E.2d 1103 (1979)). To state a claim for civil conversion, a plaintiff "must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114, 234 Ill.Dec. 455, 703 N.E.2d 67 (1998). *Z's IT Consulting Servs., Inc. v. Hunt L. Grp., LLC*, 2024 IL App (3d) 230333, ¶ 13, 256 N.E.3d 479, 482.

Here, Plaintiff has established their rights to the IGEX shares, SOF ¶¶13,14,15. They were the ones who paid for the shares, and they had the right to the proceeds thereof as acknowledged by Howard Salamon, CCC's CEO at the relevant time. Plaintiffs had the immediate right to their share of the proceeds via the terms of the Agreements. As the undisputed facts show, unbeknownst to Plaintiffs at the time, Miller has already received the money from the sale and had no right to keep the sales proceeds for himself. Plaintiffs have made demand for the shares or the proceeds thereof, and clearly, Miller wrongfully and without authorization assumed control, dominion, and ownership over the property by setting up the unauthorized bank account and by filing false documents with the Wyoming and Colorado Secretaries of State in furtherance of his scheme. These facts are not in dispute; Miller simply converted the IGEX shares for his own personal benefit. Miller should be liable for conversion of the IGEX shares.

**COUNT IV- Defendant converted Plaintiffs shares of CCC for his own benefit.**

It is undisputed that Miller, without proper authority, converted Plaintiffs' shares in CCC to himself . Miller filed a document with the Colorado Secretary of State eliminating all shareholders of CCC including Plaintiff's shares, See SOF ¶¶ 39-43.

Plaintiffs had a clear right to these shares, they belong to them and Miller admitted he never purchased them. Any argument that he had the to eliminate the shares based his hijacking control of CCC through his false filings is moot. Plaintiffs have an absolute and unconditional right to the immediate possession of the property, as the facts are clear that ownership of their shares was nit transferred to Miller. Miller had no authorization to disenfranchise Plaintiffs from their CCC Shares. Plaintiffs have made demand for these shares, See SOF ¶ 39. Every document filed by Miller regarding CCC was done so via putting forth false information regarding his ownership of the CCC shares and false information about being an officer or director of the company at the time it was filed. Through his fraudulent actions and filings, Miller assumed control, dominion, or ownership over Plaintiff's CCC shares. By eliminating the shares of CCC Miller essentially assumed dominion and control over Plaintiff's shares to such an extent that he became the sole owner of the company.

Miller did this without any consideration being paid to Plaintiffs, any vote, or any notice. Miller admits all of this, See Exhibit H, deposition of Mark Miller Pgs. 109-113. Miller should not be able to keep control, dominion, or ownership over the Plaintiffs CCC shares which he effectively stole. Plaintiffs should be entitled to summary judgment on Count IV.

**COUNT V- Defendant's actions were all part of a fraudulent scheme to deprive Plaintiff's their rightful sales proceeds from the IGEX shares.**

To prevail on a claim of fraudulent misrepresentation, a plaintiff must establish the following elements: (1) the defendant made a false statement of material fact, which (2) the defendant knew or believed to be false and (3) made it with intent to induce the plaintiff to act; (4) the plaintiff acted in justifiable reliance on the truth of the statement; and (5) thereby sustained damages. *Connick v. Suzuki Motor Co.,* 174 Ill.2d 482, 496, 221 Ill.Dec. 389, 675 N.E.2d 584 (1996); *Board of Education of City of Chicago v. A, C & S, Inc.,* 131 Ill.2d 428, 452, 137 Ill.Dec. 635, 546 N.E.2d 580 (1989); *Soules v. General Motors Corp.,* 79 Ill.2d 282, 286, 37 Ill.Dec. 597, 402 N.E.2d 599 (1980). Doe v. Dilling, 371 Ill. App. 3d 151, 168, 861 N.E.2d 1052, 1065 (2006), aff'd, 228 Ill. 2d 324, 888 N.E.2d 24 (2008)

The facts in support of Plaintiff's fraud count are undisputed here. Miller now admits he made several false statements and omissions of material fact in furtherance of his scheme including:

* Filing a document with the Wyoming Secretary of State falsely representing that Howard Salamon *"Appointed Mark Miller as Director and Chairman of the Board"* of CCC. The document also falsely stated that Howard Salamon transferred 3,800,000 shares of common stock to Mark Miller. SOF ¶18.

* Filing a document with the Colorado Secretary of State falsely representing that he was *"President", "Director"* and *"Chairman"* of CCC and the holder of *11,400,000 shares"* of CCC, SOF ¶¶ 20-23.

* Using the aforementioned documents to open up an undisclosed and unauthorized bank account, SOF ¶¶ 25,26.

* Hiding from Plaintiffs the fact that he had sold the IGEX shares and deposited the proceeds in the undisclosed bank account, SOF ¶¶31-33.

Miller knew the aforementioned statements were false as he acknowledged in his own deposition that he never owned 11,400,000 shares of CCC, See <u>Exhibit H,</u> Deposition of Mark Miller, Pgs. 100-103 and SOF ¶¶23,24. Miller made the statements with intent to induce the plaintiff to act; this was all part of his grand scheme to get Plaintiffs to agree to allow him to sell the IGEX shares on their behalf. Plaintiffs were justified in their reliance that Miller would act truthfully pursuant to his obligations to sell the IGEX shares on their behalf, adhere to his duties according to the terms of the Agreement and the SPA; and that he would not fraudulently abuse his authority to sell the IGEX shares on their behalf and turn it into the fraudulent scheme that it became. Because of Miller's fraud and misrepresentations Plaintiffs were damaged by being deprived of their proceeds and rights from IGEX shares, and their shares of CCC itself. Plaintiffs should be entitled to summary judgment on Count V.

**COUNT VI – Miller was unjustly enriched by his actions.**

To state a claim for unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.,* 131 Ill.2d 145, 160, 137 Ill.Dec. 19, 545 N.E.2d 672, 679 (1989). <u>Gagnon v. Schickel</u>, 2012 IL App (1st) 120645, ¶ 25, 983 N.E.2d 1044, 1052.

Here, Miller had no right to any shares of CCC or anything beyond the 12.5% of the proceeds from the sale of the IGEX share as specified in the Agreement, SOF ¶ 11. Plaintiff never paid any consideration for shares in CCC or IGEX, See <u>Exhibit X,</u> Deposition of Mark

Miller, Pgs. 100-103 and SOF ¶¶23,24. Yet, Miller has been enriched by the spoils of taking over CCC for himself and its assets, and maintaining 100% of the proceeds from the sale of the IGEX shares. Miller has done nothing to merit any of this.

It would clearly violate principles of principles of justice, equity, and good conscience if Miller were allowed to profit from filing false corporate documents which allowed him to set up the unauthorized bank accounts and convert the CCC shares and IGEX shares to his own benefit. Miller accomplished this only through deceit and lies. He should not be permitted to get away this. Quite simply, Miller has been unjustly enriched by his actions. Plaintiffs should be granted summary judgment in their favor on Count VI.

## <u>CONCLUSION</u>

WHEREFORE, Plaintiff respectfully requests this Court grant Plaintiff's Motion for Summary Judgment and issue an order as follows:

A. Pursuant to Count I - For an entry of on monetary damages in their favor and against Defendant Mark Miller for Breach of Contract in an amount determined by this Court and for costs, and for such other relief this Court finds fair and just.

B. Pursuant to Count II - For an entry of on monetary damages in their favor and against Defendant Mark Miller for Breach of Contract (the SPA Agreement) in an amount determined by this Court and for costs, and for such other relief this Court finds fair and just.

C. Pursuant to Count III - For an entry of on monetary damages in their favor and against Defendant Mark Miller for Conversion of IGEX shares in an amount determined by this Court, and for such other relief this Court finds fair and just.

D.  Pursuant to Count IV - For an entry of on monetary damages in their favor and against Defendant Mark Miller for Conversion of Plaintiffs CCC Common Stock in an amount determined by this Court, and for costs, and for such other relief this Court finds fair and just.

F.  Pursuant to Count V - For an entry of on monetary damages in their favor and against Defendant Mark Miller for Fraud and Misrepresentation in an amount determined by this Court and for costs, for punitive damages and for such other relief this Court finds fair and just.

G.  Pursuant to Count VI - For an entry of on monetary damages in their favor and against Defendant Mark Miller for Unjust Enrichment in an amount determined by this Court and for costs, and for such other relief this Court finds fair and just.

Respectfully submitted,

/s/ Michael S. Davis
 One of the attorneys for Plaintiffs

Michael Davis
Davis & Carter LLC
53 W. Jackson Blvd. #1560
Chicago, IL 60604
312-763-8214
ARDC # 6199722
mdavis@daviscarterlaw.com