IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| David Goulding, Howard Salamon, ) | |
| Robyn Goulding, and ) | |
| John O'Shea., ) | Case No. 1:22-cv-05224 |
|     Plaintiffs, ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| Mark Miller, ) | |
|     Defendant. ) | |

**PLAINTIFF MOTION FOR DETERMINATION OF MONETARY DAMAGES**

NOW COMES, Plaintiffs by and through their attorneys, Davis & Carter, LLC, and moves this Court for a determination of monetary and damages as follows:

**INTRODUCTION**

1. On August 14, 2025, This Court issued an Order and Judgment granting summary judgment in Plaintiff's favor pursuant to Counts I-V of the Third Amended Complaint, Dkt 135 & 138.

2. However, the Court did not issue a ruling as to specific monetary damages.

3. In its Third Amended Complaint ("TAC"), per Counts 1-IV Plaintiffs requested this Court enter monetary damages in their favor *"in an amount determined by this Court and for costs, and for such other relief this Court finds fair and just"*. See Dkt 119, Pgs.15,16.

4. Per Count V of the TAC (the Fraud Count), Plaintiffs requested damages *"in an amount determined by this Court and for costs, for **punitive damages** and for such other relief this Court finds fair and just.* Dkt 119, Pg. 16, ¶ F.

**SPECIFIC REQUEST**

1

5. As to Count I, Breach of Contract (the Agreement), Plaintiffs alleged that they were damaged in the amount of $219,138.75 pursuant to Defendants breach of the Agreement. See TAC, Dkt 119, Pg. 10, ¶65. As this Court has granted summary judgment on this count, $219,138.75 would be the appropriate dollar amount to be awarded here.

6. As to Count II, Breach of Contract (SPA Agreement) the facts, as this Court has now ruled on, are undisputed that Defendant breached the SPA Agreement. This count was pled separately from Count I. However, presuming this Court awards $219,138.75 pursuant to Count I additional damages beyond here would not be justified; as the facts ruled on by this Court are that Defendant sold *all* the IGEX shares for $219,138.75. This was based on the testimony of the purchaser Alan Masley , See TAC ¶¶ 35-39 Dkt 119, Pgs. 6-7, and SOF ¶¶ 29-31, Dkt 121-1, Pgs. 6-7. It was never definitively determined how many shares were sold (and the specific amount of money retained) by Defendant pursuant to the breach of contract in Count I (The Agreement) or pursuant to the breach of contract in Count II ( The SPA). In other words, however damages are allocated to each specific count , the total is the same. What is clear is that $219,138.75 is the amount of monetary damages that should be awarded in this case pursuant to the sale of the IGEX shares.

7. As to Count III, Conversion of IGEX shares , any monetary recovery for the proceeds from the sale of the IGEX shares would be duplicative of any monetary award from Counts I & II. Ergo Plaintiffs only request damages awarded up to $219,138.75 to the extent they are not awarded per Counts I & II.

8. As Count to IV, Conversion of CCC Common Stock; here the Court found as alleged that *"Plaintiffs were damaged and deprived of their rightful possession and ownership of their CCC shares"*. See TAC, Dkt 119, Pg. 12, ¶86. Admittedly Plaintiffs cannot prove specific

monetary damages for this Count. Defendant filed false documents with the Wyoming and Colorado Secretaries of States as part of his overall scheme; this included illicitly asserting control of CCC, and then conversion of Plaintiff's shares of the same. See Dkt 121-1, SOF ¶¶ 18-24, 38-43. Specifically, Defendant removed from the records of CCC *"all shareholders of the Company associated with the predecessor that were shareholders prior to the New (Colorado) Formation Date"*. Plaintiff is aware that this Court essentially bifurcated any derivative claims CCC may have against Defendant from this case. Thus, the proper remedy for restoring Plaintiff's rightful possession and ownership in their CCC shares is difficult. Plaintiffs argue that the cleanest remedy would be for the Court to simply state what was effectively ruled on, that *"Plaintiffs were damaged and deprived of their rightful possession and ownership of their CCC shares"*. Thus, Plaintiffs request is merely a statement to that effect by the Court. Plaintiffs could then best deal with how to recover their rights in the anticipated derivative litigation between CCC and Mark Miller.

9. As to Count V, Fraud and Misrepresentation, here again, as long as damages of $219,138.75 are awarded pursuant to the prior counts, no additional monetary damages are needed here. However, for this count Plaintiffs requested an award of costs and punitive damages.

10. In furtherance of its punitive damages request under Count V, Plaintiffs alleged that the acts and omissions of Defendant were done knowingly and with the intent to induce Plaintiffs into his scheme TAC ¶¶ 94-97, Dkt 119, Pg. 14. In Illinois Punitive damages may be awarded when the defendant's tortious conduct evinces a high degree of moral culpability, that is, when the tort is 'committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the

rights of others.' " *Slovinski v. Elliot*, 237 Ill.2d 51, 340 Ill. Dec. 210, 927 N.E.2d 1221, 1225 (2010) (quoting *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill. Dec. 559, 384 N.E.2d 353, 359 (1978)). In cases of fraud, the plaintiff must establish " 'not only simple fraud but gross fraud, breach of trust, or other extraordinary or exceptional circumstances clearly showing malice or willfulness.' " *Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 78 F.3d 266, 275-76 (7th Cir. 1996) (quoting *AMPAT/Midwest, Inc. v. Ill. Tool Works, Inc.*, 896 F.2d 1035, 1043 (7th Cir. 1990)). " '[D]eceit alone cannot support a punitive damage award,' but such an award is appropriate 'where the false representations are wantonly and designedly made.' " *Jannotta v. Subway Sandwich Shops, Inc.*, 125 F.3d 503, 511 (7th Cir. 1997) (quoting *Schneider*, 91 Ill. Dec. 590, 483 N.E.2d at 1228). *In re Collazo*, 613 B.R. 650, 662 (N.D. Ill. 2020). Here the acts of Defendant were not only found to be intentional, but they were also done in total disregard of the Plaintiffs. Plaintiffs placed their trust in Defendant to sell the IGEX shares on their behalf, instead he stole the proceeds from the sale and stole the entirety of their interest in CCC. Such wanton behavior clearly justifies punitive damages. Respectfully, Plaintiffs request punitive damages of double the monetary damages (an additional $219,138.75).

11. Additionally, per Count V, Plaintiffs requested costs and for such other relief this Court finds fair and just. As part of its request for *"other relief"*, and given the ruling in its favor, Plaintiff requests reimbursement for attorney fees. In Illinois, attorney's fees are awardable to Plaintiffs for the time and effort wasted in reliance upon misrepresentations by a defendant. See *Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266, 274 (7th Cir. 1996). Here, Plaintiffs were

4

forced to expend great sums due to the wanton and intentional fraud perpetuated upon them . Plaintiffs' attorney fees and expenses at the time of this filing are $59,123.23[1].

WHEREFORE, Plaintiff respectfully requests this Court enter an Order as follows:

A. Award monetary damages to Plaintiff in the amount of $219,138.75.

B. Award punitive damages to Plaintiff in the amount of $219,138.75.

C. Award attorney fees and costs to Plaintiffs in the amount of $59,123.23.

D. For any such relief the Court finds fair and just.

Respectfully submitted,

/s/ Michael S. Davis
 One of the attorneys for Plaintiffs

Michael Davis
Davis & Carter LLC
53 W. Jackson Blvd. #1560
Chicago, IL 60604
312-763-8214
ARDC # 6199722
mdavis@daviscarterlaw.com

---

[1] Plaintiff can submit full details of its fees and expenses upon request of court.