UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| David Goulding, Howard Salamon, Robyn Goulding and John O'Shea | ) <br> ) <br> ) Case No. 1:22-cv-05224 |
| Plaintiffs | ) Judge Sharon Johnson Coleman |
| vs. | ) Magistrate Judge McNally <br> ) |
| Mark Miller | ) <br> ) |
| Defendant | ) |

**RESPONSE TO MOTION TO DETERMINE MONETARY DAMAGES**

Now comes the Defendant, Mark Miller, by his attorneys, and responds to the Plaintiffs' Motion to Determine Monetary Damages as follows:

**INTRODUCTION**

In January of 2025, Defendant's Motion for Summary Judgment against Plaintiffs was fully briefed. The Court never addressed this motion, instead allowing Plaintiff to file a Second Amended Complaint. On March 6, 2025, Plaintiffs filed their Motion For Leave to File Second Amended Complaint. The Order granting that motion stated that Plaintiffs are permitted to file a second amended complaint with information gained through the close of discovery that conforms with the counts asserted against Defendant in their amended complaint. Plaintiffs were not permitted to add Capitol Capital Corporation ("CCC") as a plaintiff, Jennifer Miller and Market Cap Concepts, LLC as defendants, nor the corresponding counts against Defendant, Jennifer Miller, and Market Cap Concepts, LLC identified in their motion. Plaintiffs filed their Second Amended Complaint on May 25, 2025. Defendant Moved to Strike the Second Amended Complaint, which the Court granted because Plaintiffs did attempt to add CCC as a plaintiff and add Jennifer Miller and Market Cap Concepts as defendants. The Court gave Plaintiffs leave to file a Third Amended Complaint. Plaintiff filed a Third Amended Complaint and moved for

summary judgment. Defendant Responded to Plaintiffs' Motion for Summary Judgment and reasserted its Motion For Summary Judgment but did not specifically respond to each factual assertion made by Plaintiffs. At oral argument, the Court declined to hear Defendant's Motion for Summary Judgment. The court also stated that since Defendant failed to address each item in Plaintiffs' Statement of facts, she was granting summary judgment to Plaintiffs. Defendant attempted to argue that even if all facts in Plaintiffs' motion were conceded, Plaintiff still was not entitled to summary judgment because the claims were against public policy and the law. The Court then informed Defendant's counsel that it would not hear any further argument from him and that damages would be determined by Magistrate McNally.

## LEGAL ARGUMENT

Plaintiffs are not entitled to any damages for the following reasons:

### I. COUNT I AGREEMENT

Plaintiffs allege that they are entitled to summary judgment on this count because the agreement ("Agreement"), dated July 17, 2019, signed by the CEO of Capitol Capital Corporation ("CCC") as well as others, gives Plaintiffs the right to collect the proceeds of a sale by CCC of its ownership interest in Indo Global Exchange ("IGX") stock. As a matter of law, the Agreement is unenforceable because it is against public policy. Discovery in this case revealed that there are approximately 400 shareholders who own common stock in CCC. The Shareholder list indicates the initial Ownership Date of September 12, 2012, and the current date as of March 25, 2022. Some of the Plaintiffs are listed as shareholders of CCC,[1] yet they argue

---

[1] Plaintiff John O"Shea is not a shareholder of CCC; Plaintiff David Goulding has alleged that he does not personally own his shares in CCC, but that he is the owner of DSG Enterprises, LLC ("DSG"), which is listed as a shareholder of CCC; However, DSG was dissolved in 2022 by the State of Wisconsin.

that they are entitled to the proceeds of the Agreement because they were the ones who provided CCC funding[2] for the purchase of what became the IGEX shares.

In essence, Plaintiffs are suing Defendant for fraud and conversion for failing to fulfill the terms of a contract that would amount to a breach of fiduciary duty, conversion and fraud pertaining to the vast majority of CCC's common shareholders, by denying CCC shareholders the proceeds of the sale of IGEX stock. Howard Salamon entered into the agreement on behalf of CCC while at the same time giving himself and his friends priority over other CCC shareholders.

Enforcement of illegal contracts is against Illinois public policy. *See Vine St. Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 296, 856 N.E.2d 422, 305 Ill. Dec. 617 (2006); *Gamboa v. Alvarado*, 407 Ill. App. 3d 70, 75, 941 N.E.2d 1012, 347 Ill. Dec. 143 (2011) The public policy of the State of Illinois is found not only in the constitution, statutes, and long-standing case law (*Clark v. Children's Memorial Hospital*, 2011 IL 108656, ¶ 79), 955 N.E.2d 1065, 353 Ill. Dec. 254, but can also be found in federal law (*Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502, 506, 485 N.E.2d 372, 92 Ill. Dec. 561 (1985)).

Caselaw rulings have held that courts will not enforce an illegal contract or any rights that arise from an illegal contract. *Goodrich v. Tenney*, 144 Ill. 422, 430, 33 N.E. 44 (1893); *Ritacca v. Girardi*, 2013 IL App (1st) 113511, ¶ 32, 996 N.E.2d 236, 374 Ill. Dec. 789. This common law doctrine derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act. *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29 (1987). Illegality of contract is, therefore, a defense against actions seeking enforcement of a contract. *Kim*, 368 Ill. App. 3d at 307.

---

[2] Plaintiffs admit that they purchased shares in CCC, rather than loaning the money via a security agreement or other financial vehicle.

A contract is illegal where (1) its terms violate Illinois or federal law (see *Gamboa v. Alvarado*, 407 Ill. App. 3d 70, 75, 941 N.E.2d 1012, 347 Ill. Dec. 143 (2011)) or (2) it requires one or both parties to perform an illegal act (see *St. Louis, J. & C. R. Co. v. Mathers*, 104 Ill. 257, 259 (1882)). The Seventh Circuit has rejected the implication that only a criminal act may be 'illegal conduct,' *Syndicate Sales, Inc. v. Hampshire Paper Corp.,* 192 F.3d 633, 641 (7th Cir.1999).

Breach of fiduciary duty, fraud and conversion are considered illegal acts in Illinois. Fraud is generally considered a criminal offense, while breach of fiduciary duty and conversion are civil torts that can be pursued in a lawsuit,

Corporate officers owe a fiduciary duty of loyalty to their corporate employer. *Everen Securities v. A.G. Edwards & Sons*, 308 Ill. App. 3d 268, 276, 719 N.E.2d 312 (3rd Dist. 1999). Howard Salamon, who was the CEO of CCC at the time, gave preference to himself and his associates over the proceeds of CCC's sale of IGEX stock when he signed the Agreement. Plaintiffs cannot enforce a contract which amounts to a breach of fiduciary duty and fraud against the other CCC shareholders. Therefore, Plaintiffs should not be granted damages for enforcement of an illegal contract.

## II.     COUNT II- THE SPA AGREEMENT.

Plaintiffs falsely allege that Mark Miller breached the Stock Purchase Agreement ("SPA") because Plaintiffs[3] fully performed their obligations under the contract and Miller did not pay CCC the purchase price of $102,000 for 100,750,000 shares of IGEX. It is true that Miller never paid the $120,000; However, it is also undisputed that Miller never received any shares of IGEX from

---

[3] The SPA Agreement was between Capitol Capital Corporation ("CCC") and Mark Miller. Plaintiffs have no standing to sue on behalf of CCC (See Exhibit G of Plaintiffs' Motion for Summary Judgment and see Section III below for a discussion on standing)

CCC pursuant to the SPA agreement Plaintiff, with unclean hands, cannot succeed on a breach of contract action where they did not fulfill their own obligations under the contract.

It is hornbook law that a Plaintiff's failure to perform its obligation under a contract precludes it from enforcing the contract's provisions. *Zemco Manufacturing, Inc. v. Navistar International Transportation Corp.,* 270 F.3d 1117, 1123 (7th Cir. 2001). Therefore, Plaintiffs should not be granted damages as to Count II for enforcement of a contract which it did not perform.

### III. PLAINTIFFS LACK STANDING TO OBTAIN DAMAGES

Plaintiffs filed their claims against Defendant in Counts II through VI based on their individual claims instead of derivative claims on behalf of CCC. The Court in this matter has already denied Plaintiffs the right to amend their claims to add CCC as a plaintiff. It is established law in Illinois that individual shareholders lack standing to sue for corporate actions except in derivative lawsuits.

In *Stevens v. McGuireWoods LLP*, 2015 IL 118652, 43 N.E.3d 923, the Illinois Supreme Court dealt with a case factually similar to the case at bar. Plaintiffs are former minority shareholders in Beeland Management LLC (Beeland). In 2005, plaintiffs hired the law firm of McGuireWoods LLP (McGuireWoods) to bring certain claims against Beeland's managers. Tom Price and Alan Goodman, and against Beeland's owner and majority shareholder, Jim Rogers. The gist of these claims was that Rogers, Price, and Goodman had misappropriated Beeland's trademarks and other intellectual property, to the detriment of Beeland. Plaintiffs brought these claims both in their individual capacities and derivatively on behalf of Beeland. In August 2008, the trial court dismissed without prejudice all of the claims brought against Price and Goodman,

as well as three of the nine counts brought against Rogers. Plaintiffs filed an amended complaint added seven new counts against Beeland's corporate counsel, Sidley Austin LLP (Sidley). The trial court dismissed with prejudice all of plaintiffs' claims against Sidley on several grounds, including that the claims were filed untimely and that all of plaintiffs' individual claims against Sidley lacked standing in their individual capacities. Plaintiffs then filed a cause of action against McGuireWoods in their individual capacity and a derivative action on behalf of Beeland for breach of fiduciary duty that caused the diminishment of the value of Beeland shares of stock.

After limited discovery, both plaintiffs and McGuireWoods filed motions for summary judgment. McGuireWoods argued that plaintiffs were bound by the trial court's determination in the underlying case that plaintiffs lacked standing to sue Sidley in their individual capacities. Given this, McGuireWoods argued, plaintiffs' claim for breach of fiduciary duty necessarily failed because, even if McGuireWoods had brought plaintiffs' individual claims against Sidley in a timely manner, those claims would have failed as a matter of law for lack of standing.

With respect to the plaintiffs individual claims, the trial court upheld the previous order dismissing those claims because plaintiffs lacked standing in their individual capacities. The appellate court held that, because the trial court in the underlying case had determined that plaintiffs lacked standing to bring claims against Sidley in their individual capacities, plaintiffs were collaterally estopped from now asserting that they would have prevailed on those claims had McGuireWoods asserted them in a timely manner.

The Supreme Court agreed with both the trial court and the appellate court that the individual plaintiffs, in their individual capacities, lacked any and all standing to sue Sidley. It reasoned that had McGuireWoods successfully prosecuted plaintiffs' derivative claims against Sidley in the underlying case, plaintiffs would have *recovered nothing in their individual*

*capacities.* Rather, the resulting judgment or settlement would have remitted entirely and directly to Beeland, with plaintiffs benefiting only indirectly and like all other shareholders through any resulting increase in Beeland's share price[4].

Plaintiffs are seeking damages in their individual capacity, rather than a derivative action on behalf of CCC. Since the trial court denied Plaintiffs leave to file a derivative action, Plaintiffs are not entitled to any damages.

### IV. PLAINTIFFS CLAIMS FOR DAMAGES ARE UNSUPPORTED BY THE FACTS

Plaintiffs claim for damages for Count I of their Third Amended Complaint states: Plaintiffs alleged that they were damaged in the amount of $219,138.75. Plaintiffs fail to set forth any reason why they should be entitled to damages of $219,138.75 for Count I for a breach of contract action for a set number of shares of Indo Global Exchange that CCC sold for a net of $120,000. Those funds belong to CCC, not the individual Plaintiffs.

As for Count II, Plaintiffs suffered no direct damages, nor did CCC, because CCC never departed with the shares that were supposed to be provided to Defendant.

As for Counts II through VI, Plaintiffs offer no evidence of how $219,138.75 corresponds to their claims, even if one disregards that these are claims that do not belong to Plaintiffs, but to CCC itself.

---

[4] The Stevens case noted that standing was not pled as an affirmative defense yet the court chose to override the forfeiture in the interest of maintaining a sound and uniform body of precedent. See *Jackson v. Bd. of Election Comm'rs*, 2012 IL 111928, ¶ 33, 975 N.E.2d 583, 363 Ill. Dec. 557.

## V. PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS FEES OR PUNITIVE DAMAGES

The American Rule has been interpreted to mean that "attorney fees and other costs of litigation are ordinarily not recoverable by the prevailing party unless specifically authorized by statute or contract." (Emphasis added.) Qazi v. Ismail, <u>50 Ill. App. 3d 271, 272, 364 N.E.2d 595, 7 Ill. Dec. 434 (1977)</u>; Plaintiffs have not cited any statutory or contractual provisions that would allow them to claim attorneys fees. Additionally, since Plaintiffs cannot prove any damages relating to their individual claims against the Defendant, they cannot recover punitive damages.

## CONCLUSION

Wherefore, for all of the above reasons, Defendant requests an order denying Plaintiffs any damages and for costs and fees related to Plaintiffs' Motion to Determine Monetary Damages.

Respectfully Submitted,

*Thomas F. Burke*

Attorney for the Defendant

Thomas F. Burke
Johnson & Bell, Ltd
33 W. Monroe Street, 27th Floor
Chicago, IL 60603
burket@jbltd.com