

**BC**

**FILED**
3/31/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**CVK**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| David Goulding, Howard Salamon, | ) | |
| Robyn Goulding, and | ) | |
| John O'Shea., | ) | Case No. 1:22-cv-05224 |
| Plaintiffs, | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | Magistrate Judge Laura K. McNally |
| Mark Miller, | ) | |
| Defendant. | ) | |

# PLAINTIFFS' MOTIONS IN LIMINE

COME NOW, Plaintiffs David Goulding, Howard Salamon, Robyn Goulding, and John O'Shea, appearing pro se, pursuant to the Federal Rules of Evidence and the Federal Rules of Civil Procedure, and hereby respectfully move this Court for the following relief:

1. To admit into evidence the criminal conviction and guilty plea of Defendant Mark Miller in <u>United States Securities and Exchange Commission v. Mark A. Miller</u>, Case No. 21-CV-01445 (DSD/ECW), to demonstrate a pattern of similar misconduct relevant to the civil claims in this case.

2. To permit the use of Alan Masley's deposition testimony in lieu of live testimony at trial, based on his residence in Puerto Rico and inability to appear in person.

3. To permit remote testimony via Zoom for witnesses John O'Shea (residing in Australia) and Howard Salamon (residing in New York) at trial in Chicago.

In support of these motions, Plaintiffs state as follows:

1

**Motion I: To Admit Evidence of Mark Miller's Criminal Conviction and Guilty Plea**

**Facts**

1. **Background of the Civil Case.** Plaintiffs bring this civil action against Defendant Mark Miller alleging breach of contract, conversion, fraud, misrepresentation, breach of fiduciary duty, and unjust enrichment arising from Miller's unauthorized takeover of Capitol Capital Corporation (CCC), his misappropriation of Indo Global shares owned by CCC, and his diversion of the proceeds from the sale of those shares.

2. **Formation and Ownership of CCC.** From its formation in 2012 until June 20, 2020, the principal owners of CCC were Howard Salamon, Securities Counselors, Inc., and David Goulding. The sole officers and directors were Howard Salamon and David Goulding. The individual Plaintiffs collectively owned approximately seventy-six percent of the outstanding shares of CCC.

3. **Acquisition of Indo Global Shares.** On or about October 10, 2014, Indo Global issued a convertible promissory note to Dermot Monaghan. On or about August 5, 2016, CCC purchased the Monaghan Note from Dermot Monaghan. On the same date, CCC advanced twenty-five thousand dollars to Indo Global in exchange for a one-hundred-thousand-dollar, eight percent Convertible Redeemable Note. On or about July 17, 2019, CCC exercised its option to convert both notes in return for six hundred eighty million shares of Indo Global common stock.

2

4. **Agreement for Sale of Indo Global Shares.** On July 19, 2019, the parties entered into an agreement whereby Mark Miller and Market Cap Concepts LLC were each to receive twelve and one-half percent of the proceeds from the sale of the Indo Global shares for their efforts in facilitating the sale. The agreement specifically provided that the shares belonged solely to CCC, and no other party had any rights or ownership in the shares.

5. **Miller's Unauthorized Actions.** Unbeknownst to Plaintiffs, on October 6, 2019, without any authority, Mark Miller filed Articles of Incorporation with the Wyoming Secretary of State falsely representing that Howard Salamon had appointed Mark Miller as Director and Chairman of the Board of CCC and had transferred three million eight hundred thousand shares of common stock to Mark Miller. At no time did Howard Salamon ever appoint Mark Miller to any position or transfer any shares to him.

6. **Re-domestication to Colorado.** On December 11, 2019, without any authority, Mark Miller re-incorporated CCC from Wyoming to Colorado. The Colorado Articles of Incorporation falsely stated that the re-domestication was pursuant to a unanimous decision of the Board of Directors. Mark Miller falsely signed the document as President, Director, and Chairman of CCC and as holder of eleven million four hundred thousand shares. Mark Miller was not the President, Director, Chairman, or shareholder of CCC at that time.

7. **Sale of Indo Global Shares.** Unbeknownst to Plaintiffs, Mark Miller sold the Indo Global shares to Tiger Trout Capital in multiple transactions between November 2019 and February 2020. According to the deposition testimony of Alan Masley, the owner of Tiger Trout Capital, the total amount paid for the shares was two hundred nineteen thousand one hundred thirty-eight dollars and seventy-five cents. Miller deposited the proceeds into a bank account at American National Bank of Minnesota that he had opened in the name of CCC without the knowledge or authorization of Plaintiffs.

8. **Diversion of Proceeds.** On December 16, 2019, Miller received a wire transfer of one hundred twenty thousand eight hundred twenty-five dollars from Tiger Trout Capital. On the same date, Miller transferred forty thousand dollars to a savings account, wired ten thousand dollars to himself, and wired sixty-two thousand four hundred twelve dollars and fifty cents to Market Cap Concepts LLC. Plaintiffs never received any of the proceeds from the sale of the Indo Global shares as required under the agreement.

9. **Miller's False Denials.** On January 20, 2020, in response to an inquiry from David Goulding, Mark Miller falsely denied selling any of the Indo Global shares, stating that nothing further transpired from Indo Global and that it was a dead end on every aspect. It was not until discovery commenced in this case that Mark Miller admitted to selling the shares.

10. **Elimination of Shareholders.** On August 6, 2023, Mark Miller and Jennifer Miller filed Amended and Restated Articles of Incorporation with

4

the Colorado Secretary of State, which included a Unanimous Written Consent of the Directors dated June 15, 2022. This document purported to direct the transfer agent to remove from the records all shareholders associated with the predecessor company prior to the new formation date, effectively eliminating the entire interest of the rightful shareholders of CCC. On December 13, 2024, less than thirty minutes prior to his deposition, Mark Miller filed Articles of Amendment with the Colorado Secretary of State implementing a one million for one reverse split of all common stock, with any fractional shares to be redeemed for ten cents per share and all remaining unclaimed stock to be permanently cancelled.

11. **SEC Criminal Conviction.** On February 12, 2025, the United States District Court for the District of Minnesota entered a final judgment against Mark Miller in United States Securities and Exchange Commission v. Mark A. Miller, Case No. 21-CV-01445 (DSD/ECW). The judgment found Miller liable for violations of Section 10(b) of the Securities Exchange Act of 1934 and Section 17(a) of the Securities Act of 1933. The judgment permanently enjoined Miller from violating securities laws, barred him from acting as an officer or director of any public company, and barred him from participating in penny stock offerings. The judgment also imposed disgorgement of one hundred twenty-six thousand seven dollars plus prejudgment interest of nine thousand five hundred thirty-six dollars.

5

12. **Pattern of Similar Misconduct.** The misconduct underlying Miller's criminal conviction in the SEC case is strikingly similar to the conduct alleged in this civil case. In both cases, Miller engaged in a pattern of fraudulent conduct involving the unauthorized takeover of corporate entities, the filing of false corporate documents, the misappropriation of corporate assets, and the diversion of proceeds for his personal benefit. The SEC case involved Miller's fraudulent manipulation of penny stock companies, including the filing of false documents with state authorities and the misappropriation of corporate assets. Similarly, in this civil case, Miller filed false documents with the Wyoming and Colorado Secretaries of State, falsely claimed ownership and control of CCC, misappropriated the Indo Global shares owned by CCC, and diverted the proceeds from the sale of those shares.

**Legal Basis**

13. **Admissibility Under Federal Rule of Evidence 404(b).** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith, but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. USCS Fed Rules Evid R 404.

14. **Pattern of Similar Misconduct.** Miller's criminal conviction in the SEC case is admissible to show a pattern of similar misconduct, including the

unauthorized takeover of corporate entities, the filing of false corporate documents, the misappropriation of corporate assets, and the diversion of proceeds. This pattern of conduct is directly relevant to the civil claims in this case, which involve the same types of fraudulent activities. The evidence demonstrates Miller's motive, intent, and absence of mistake in engaging in the conduct alleged in this case.

15. **Impeachment Under Federal Rule of Evidence 609.** If Miller testifies at trial, his criminal conviction is admissible for impeachment purposes. Evidence of a criminal conviction is admissible to attack the credibility of a witness if the crime was punishable by death or imprisonment in excess of one year, or if the crime involved dishonesty or false statement. USCS Fed Rules Evid R 609.

16. **Illinois Law on Impeachment.** Under Illinois law, no person shall be disqualified as a witness by reason of conviction of any crime, but such conviction may be shown for the purpose of affecting the credibility of such witness. 735 ILCS 5/8-101. Miller's criminal conviction for securities fraud is directly relevant to his credibility and may be introduced to impeach his testimony if he testifies.

17. **Probative Value Outweighs Prejudicial Effect.** The probative value of Miller's criminal conviction substantially outweighs any prejudicial effect. The conviction is highly probative of Miller's pattern of fraudulent conduct, his motive and intent in engaging in the conduct alleged in this case, and his

credibility if he testifies. The evidence is not unfairly prejudicial because it is directly relevant to the issues in this case and does not involve inflammatory or emotional content that would improperly influence the jury.

**Motion II: To Permit Use of Alan Masley's Deposition Testimony in Lieu of Live Testimony**

**Facts**

18. **Alan Masley's Residence and Unavailability.** Alan Masley resides at 1800 McLeary Street, San Juan, Puerto Rico. He is not presently located within the continental United States and resides outside the geographic area from which he can be compelled to appear in person at trial in the Northern District of Illinois. Masley is the father of a newborn child, requiring his ongoing presence and attention, and he is unable to appear at trial in person to provide live testimony.

19. **Masley's Deposition Testimony.** Alan Masley provided testimony in this case at a deposition taken on December 17, 2024, before Cheryl A. Goetsch, Certified Shorthand Reporter and Registered Professional Reporter, at 180 North LaSalle Street, Suite 2800, Chicago, Illinois, in the presence of counsel for the parties, commencing at 10:20 a.m. Masley's deposition testimony was given under oath. During the deposition, Masley answered questions truthfully and to the best of his knowledge and recollection.

20. **Substance of Masley's Testimony.** Masley testified that he is the owner of Tiger Trout Capital Puerto Rico, a Puerto Rico limited liability company. He

testified that Tiger Trout purchased shares of Indo Global (IGEX) from Capitol Capital Corporation in seven separate transactions between November 18, 2019, and February 28, 2020. The transactions were as follows: November 18, 2019, one hundred thirty-six million one hundred thirty thousand shares for nineteen thousand nine hundred nineteen dollars and fifty cents; November 26, 2019, one hundred thirty-six million one hundred thirty thousand shares for thirteen thousand one hundred thirteen dollars; December 10, 2019, one hundred eighty million shares for thirty-six thousand two hundred twenty-five dollars; December 16, 2019, two hundred ten million shares for sixty-six thousand four hundred twelve dollars and fifty cents; January 9, 2020, two hundred ten million shares for sixty thousand three hundred seventy-five dollars; February 13, 2020, one hundred fifteen million shares for sixteen thousand five hundred thirty-one dollars and twenty-five cents; and February 28, 2020, one hundred eighty-seven million five hundred thousand shares for six thousand five hundred sixty-two dollars and fifty cents. The total amount paid was two hundred nineteen thousand one hundred thirty-eight dollars and seventy-five cents.

21. **Payments to Capitol Capital Corporation.** Masley testified that all payments were made by wire transfer to Capitol Capital Corporation at P.O. Box 194, Pequot Lakes, Minnesota. He testified that he did not make any payments to John O'Shea, Robyn Goulding, Market Cap Concepts, Mark

9

Miller, Jennifer Miller, David Goulding, or Howard Salamon. He testified that he sold the shares in the open market through a brokerage account.

22. **Masley's Affidavit.** On March 3, 2026, Alan Masley executed an affidavit stating that he resides in San Juan, Puerto Rico, is unable to appear at trial in person due to his location outside the continental United States and his obligations as the father of a newborn child, and that his deposition testimony was given under oath and that he answered questions truthfully. Masley confirmed that he has not intentionally withheld any material facts in his deposition testimony and has no present intention to change or recant any material portion of that testimony.

## Legal Basis

23. **Use of Depositions Under Federal Rule of Civil Procedure 32(a)(4).** A party may use a deposition at trial against any party who was present or represented at the taking of the deposition if the court finds that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment, or that the witness is beyond the reach of a subpoena, or upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used. USCS Fed Rules Civ Proc R 32.

24. **Masley is Beyond the Reach of a Subpoena.** Alan Masley resides in San Juan, Puerto Rico, which is outside the geographic area from which he can be

compelled to appear in person at trial in the Northern District of Illinois. Puerto Rico is not within the continental United States, and Masley cannot be served with a subpoena requiring his attendance at trial in Chicago.

25. **Exceptional Circumstances Exist.** Exceptional circumstances exist to make it desirable, in the interest of justice, to allow Masley's deposition to be used at trial. Masley is the father of a newborn child, requiring his ongoing presence and attention. Requiring Masley to travel from Puerto Rico to Chicago to testify in person would impose a significant hardship on him and his family. The cost and inconvenience of requiring Masley to appear in person would be substantial and would not be justified by the marginal benefit of live testimony over deposition testimony.

26. **Masley's Testimony is Critical.** Masley's testimony is critical to establishing the sale of the Indo Global shares and the proceeds received by Capitol Capital Corporation. Masley is the only witness who can testify to the details of the transactions between Tiger Trout Capital and Capitol Capital Corporation, including the dates, amounts, and payment methods. Without Masley's testimony, Plaintiffs would be unable to prove a critical element of their case.

27. **Deposition Testimony is Reliable.** Masley's deposition testimony was given under oath in the presence of counsel for the parties. Masley answered questions truthfully and to the best of his knowledge and recollection. Masley has executed an affidavit confirming that he has not intentionally withheld

any material facts and has no present intention to change or recant any material portion of his testimony. The deposition testimony is a reliable substitute for live testimony.

**Motion III: To Permit Remote Testimony via Zoom for John O'Shea and Howard Salamon**

**Facts**

28. **John O'Shea's Residence.** John O'Shea is an individual residing at 39 Jackson St. Kilda Vic 3182 Australia. He is one of the named Plaintiffs in this case and is a shareholder of Capitol Capital Corporation. O'Shea was a party to the July 19, 2019, agreement regarding the distribution of proceeds from the sale of the Indo Global shares.

29. **Howard Salamon's Residence.** Howard Salamon is an individual residing at 20 Margaret Avenue, Lawrence, New York. He is one of the named Plaintiffs in this case and was the Chief Executive Officer of Capitol Capital Corporation from its formation in 2012 until August 12, 2019. Salamon was a party to the July 19, 2019, agreement regarding the distribution of proceeds from the sale of the Indo Global shares.

30. **Distance and Cost of Travel.** John O'Shea resides in St. Kilda Vic, Australia, which is approximately nine thousand miles from Chicago, Illinois. The cost of travel from Australia to Chicago for trial would be substantial, including airfare, lodging, and other expenses. Howard Salamon resides in Lawrence, New York, which is approximately eight hundred miles from Chicago, Illinois. While the distance is less than for O'Shea, the cost and

12

inconvenience of requiring Salamon to travel to Chicago for trial would still be significant.

31. **Availability of Remote Testimony Technology.** The Court has the capability to receive testimony by contemporaneous transmission from a different location via Zoom videoconference. This technology allows witnesses to testify remotely while maintaining the integrity of the trial process, including the ability of the jury to observe the witness's demeanor and credibility.

**Legal Basis**

32. **Remote Testimony Under Federal Rule of Civil Procedure 43(a).** For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location. USCS Fed Rules Civ Proc R 43.

33. **Good Cause and Compelling Circumstances.** Good cause and compelling circumstances exist to permit John O'Shea and Howard Salamon to testify remotely via Zoom. O'Shea resides in Australia, approximately nine thousand miles from Chicago, and the cost and inconvenience of requiring him to travel to Chicago for trial would be substantial. Salamon resides in New York, approximately eight hundred miles from Chicago, and the cost and inconvenience of requiring him to travel to Chicago would also be significant. Permitting remote testimony would reduce the cost and burden on the witnesses while maintaining the integrity of the trial process.

34. **Appropriate Safeguards.** Appropriate safeguards can be implemented to ensure the integrity of the remote testimony. The Court can require that the witnesses testify under oath, that the testimony be recorded, and that the jury be able to observe the witnesses via video transmission. The Court can also require that counsel for the parties be present at the remote location to ensure that the testimony is conducted in accordance with the rules of evidence and procedure.

35. **Remote Testimony is in the Interest of Justice.** Permitting remote testimony for John O'Shea and Howard Salamon is in the interest of justice. The witnesses are critical to Plaintiffs' case, and their testimony is necessary to establish the facts underlying the claims. Requiring the witnesses to travel to Chicago for trial would impose a significant hardship and expense that is not justified by the marginal benefit of live testimony over remote testimony. Remote testimony via Zoom allows the witnesses to testify while minimizing the cost and inconvenience to the witnesses and the parties.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

1. An order admitting into evidence the criminal conviction and guilty plea of Defendant Mark Miller in United States Securities and Exchange Commission v. Mark A. Miller, Case No. 21-CV-01445 (DSD/ECW), to

demonstrate a pattern of similar misconduct relevant to the civil claims in this case and to impeach Miller's credibility if he testifies.

2. An order permitting the use of Alan Masley's deposition testimony in lieu of live testimony at trial, based on his residence in Puerto Rico and inability to appear in person.

3. An order permitting remote testimony via Zoom for witnesses John O'Shea (residing in Australia) and Howard Salamon (residing in New York) at trial in Chicago.

4. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Plaintiffs David Goulding, Howard Salamon, Robyn Goulding, and John O'Shea

s/s David Goulding, s/s Howard Salamon, s/s Robyn Goulding, s/s John O'Shea

Dated: March 31, 2026